THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WALTER SCOTT, Plaintiff in Error.

*Opinion filed December 17, 1913.*

1. CRIMINAL LAW—*when judgment of conviction should not be reversed on the evidence.* A judgment of conviction based upon the verdict of a jury should not be reversed as not warranted by the evidence, even though there is testimony tending to support the defense of an alibi, unless it is clear that the verdict is so clearly contrary to the weight of the evidence as to show that it is the result of passion or prejudice.

2. SAME—*it is proper to prove circumstances of the arrest.* In a prosecution for robbery it is not error to permit a police officer to testify to the circumstances under which the accused was arrested, including a statement of where he was found and the names of the persons then with him, even though one of such persons is such a notorious criminal that the jurors may have heard of him and be cognizant of his bad reputation.

3. SAME—*State·may prove by schoolboys that school was not in session on a certain date.* Where a young brother of the accused testifies that he attended a picture show with the accused on the night of the crime and fixes the date by the circumstance that he had attended school on that day, it is not improper for the prosecution to prove by schoolboys who attended the same school the witness attended that the school was not in session that day.

4. SAME—*when an officer may testify though he remained in court room when other witnesses were excluded.* It is not error to permit an officer to testify in a criminal case though his name was not indorsed on the indictment and though he remained in the court room notwithstanding a rule had been entered excluding the witnesses, where he was the officer in charge of the court and where the court offered to allow counsel for the accused to interview the witness before he testified.

5. SAME—*mere fact that State's attorney makes a statement outside the record is not necessarily reversible error.* The mere fact that the State's attorney, in describing the physical surroundings where the robbery took place, makes a statement which is outside of the record is not necessarily ground for reversal, there being nothing in the statement tending to prejudice the accused.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. GEORGE KERSTEN, Judge, presiding.

CRUICE & LANGILLE, (DANIEL L. CRUICE, of counsel,) for plaintiff in error.

P. J. LUCEY, Attorney General, MACLAY HOYNE, State's Attorney, and EUGENE P. MORRIS, (JOHN T. FLEMING, of counsel,) for the People.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Plaintiff in error, Walter Scott, *alias* Frank McErlane, was jointly indicted with James Perry and Robert Webb for robbery. Scott was tried alone by a jury in the criminal court of Cook county. He was found guilty as charged, and in addition to the general verdict of guilty the jury found that at the time of the commission of said robbery defendant was armed with a revolver, with intent, if resisted, to then and there kill or maim the person so robbed. The age of the defendant was found to be between ten and twenty-one years, and that he was about the age of twenty years at the time the offense was committed. Motions for a new trial and in arrest of judgment were successively made and overruled and judgment was rendered on the verdict. The defendant below has sued out of this court a writ of error for the purpose of obtaining a review of the record of his conviction.

Plaintiff in error contends that the evidence is insufficient to sustain the verdict. The testimony is, in substance, as follows:

William E. McDonough testified that about 7:30 in the evening of December 26, 1912, he was in the vicinity of Fifty-second street and Indiana avenue, going north on the west side of the street; that while he was walking north on Indiana avenue he was approached by three men, one of whom was James Perry, who drew a revolver and ordered him to hold up his hands, which he did; that he started to run away from the men, when the other two

drew revolvers and ordered him to halt, which command he obeyed; that the men ordered him in between two flat-buildings and there took from him four five dollar bills and some small change, a watch and chain worth about $25 and an overcoat which was valued at about $30; that McDonough then was permitted to return to the street, and from there went to his home, called up the police station and reported the robbery, giving to the police a description of the property taken. He testified that while the men had him between the buildings they were talking to him and calling him vile names. He says there was an electric light which shone in between the two flat-buildings, which enabled him to see distinctly the parties who robbed him, and he positively identified plaintiff in error as one of the three who committed the offense. This witness also testified to other occurrences, which will be referred to hereinafter.

John T. Malloy, a police officer, testified that on January 14, 1913, he went to a flat-building at 4307 Wabash avenue and went up to a room, where he found plaintiff in error, James Perry and Robert Webb. The officer placed them under arrest and took them to the station. He testifies that before leaving for the station the room where the men were arrested was searched and four or five overcoats were found, a box of automobile plugs, wrenches for gas tanks for automobiles and a lot of cartridges. The overcoats were taken to the station and placed in a room up-stairs, and various persons who had reported losses by theft were brought to the station. Among others who came upon notice from the police was McDonough, who came to the station in the evening after the arrest had been made in the morning. The officer testifies that McDonough found an overcoat in the lot that came from the room in the flat, which he identified as the one that had been taken from him on the 26th of December, and that upon being brought into the presence of the three men he identified plaintiff in

error and Perry as two of the three that had robbed him. McDonough also testified to his identification of the overcoat and of plaintiff in error and Perry, and testified further that plaintiff in error, who was then present in court, was one of the three men who committed the robbery.

John L. Hogan, another police officer, testified that he was at the station four or five days after plaintiff in error had been arrested, and that McDonough and plaintiff in error had a conversation, in his presence, in Capt. Lavin's office. He testified that plaintiff in error and McDonough talked over the hold-up in a friendly way and that plaintiff in error tried to prevail on McDonough that he was mistaken, and said to the prosecuting witness, "Are you quite sure, now, that I am the fellow?" to which McDonough replied: "Yes, I am quite sure; you stood alongside of me here—right up close to me; you were the fellow that didn't do any of the talking, but I couldn't forget your face." Plaintiff in error replied: "Well, if you say I am the fellow I must be the fellow; there is nothing for me to do if you identify me."

The foregoing is substantially all of the evidence given on behalf of the People. The defense interposed was an alibi, which was testified to by Margaret McErlane, mother of plaintiff in error; Vincent McErlane, his thirteen-year-old brother; Margaret Mary McErlane, a sister; and the plaintiff in error himself. These witnesses all testify that they reside at 714 South Claremont avenue, near Western avenue, on the west side of Chicago; that the mother keeps house, Margaret Mary works in the telephone office and Vincent is a schoolboy. Plaintiff in error testified that he had been staying with a friend at Forty-seventh and Indiana avenue for a short time prior to his arrest, but he declined to give the name of the person on the ground that he did not want to bring him into the case. When asked in reference to his occupation he said that he had worked for his father and at the Chicago Athletic Club, and for an uncle

in Michigan for two summers, and worked for a dyeing and cleaning house at Twenty-fifth street and Cottage Grove avenue. Vincent McErlane testified that he went to a picture show with plaintiff in error on the evening of December 26, and that he remembered the day and that he had been to school that day. In rebuttal it was shown that his school was not being taught that week but was enjoying its holiday vacation.

McDonough testified that his recollection was that the evening of the robbery was a clear, cold night. John H. Armington, local forecaster of the United States weather bureau, testified that his records showed that on the evening of December 26, 1912, the sky was cloudy.

It will readily be seen from the foregoing recital of the testimony that the issue involved depends entirely upon the credibility of the witnesses. McDonough is very positive in his identification of plaintiff in error as he is also of the overcoat which was found in the room where he was arrested, and his credibility is not in any way impeached except by the unimportant fact as to whether it was clear or cloudy. He does not testify that he identified the parties by the moonlight or starlight. He testified that an electric light shone in between the flat-buildings, which enabled him to get a good view of his assailants. If he saw the parties by the aid of an electric street light it was not material whether the sky was clear or cloudy. In our opinion the credibility of McDonough was not seriously impaired by the testimony of Armington that the sky was cloudy on the night of the robbery. The proof of the alibi, as sworn to only by the plaintiff in error, his mother, brother and sister is not free from grounds of criticism. There is no fact or current event testified to by the witnesses for plaintiff in error which satisfactorily shows that the occurrences testified to by them may not have happened on any other evening as well as on the evening of the 26th. The sister, when asked how she remembered that it was on

the evening of the 26th her brothers went to the picture show, said that she remembered it because it was during the holidays, and the brother associated the circumstance with his having been at school that day. The mother testified that she remembered her son was home on the evening of the 26th of December, and that he and Vincent went to a picture show and returned about nine o'clock. There are no details given, either by the plaintiff in error or his brother, in reference to the trip to the picture show, and no person who saw them either at the picture show or on the way going or returning is called to corroborate them. It is not the duty of this court to reverse on the facts a criminal case which has been determined by a jury, unless we can see that the verdict is so clearly contrary to the testimony as to satisfy us that it is the result of prejudice or passion. We find in this record no such indication, and plaintiff in error's contention that the verdict is not supported by the evidence cannot be sustained.

On the cross-examination of plaintiff in error the court permitted the attorney for the State to ask him a number of questions in relation to his operating or riding in automobiles.. The line of inquiry seems to have been suggested either by the statement of plaintiff in error that when he worked for the dyeing and cleaning works he drove a wagon, which led to the inquiry whether it was a motor truck or a horse-drawn vehicle, or the questions may have been suggested to the mind of the attorney by the circumstance that a large number of automobile plugs and gas-tank keys were found in the room where the plaintiff in error was arrested. Plaintiff in error's counsel objected to the cross-examination of plaintiff in error in regard to his knowledge of and connection with the operation of automobiles. The objections were overruled and exceptions preserved, and error is assigned upon the action of the court in overruling these objections. Plaintiff in error's counsel say in their brief that Webb, who was arrested at

the same time and jointly indicted with plaintiff in error, was a notorious automobile bandit, and that the questions put to plaintiff in error tended to arouse a suspicion that plaintiff in error had been associated with Webb in his automobile hold-ups. This argument is based on a matter entirely outside of the record. There was no proof introduced by either party tending to show that Webb was a notorious automobile bandit, and all the information we have on that subject is furnished by the gratuitous statements of counsel for plaintiff in error. Even if it be assumed that Webb had such reputation and that it was so notorious that the jurors would be presumed to know something of it, still the line of· questioning objected to, when considered in connection with the negative answers given by plaintiff in error, would seem to rebut any inference that he had ever been associated in any way with Webb or any other person in connection with the operation of an automobile. He stated that he had ridden in an automobile once in his life and that he knew nothing about running one. We find no error in the rulings of the court in regard to these questions.

In line with this same objection the point made by plaintiff in error that the court erred in allowing officer Malloy to testify that he arrested the plaintiff in error in company with Webb cannot be sustained. However bad Webb's reputation may have been and however damaging it may have been to plaintiff in error to be found in his company, the fact that he was so found and arrested was proper to go to the jury as part of the surrounding circumstances of the arrest. If Webb was as bad a man as plaintiff in error's counsel represent him to be and his reputation so notorious that every person was presumed to know it, then if plaintiff in error desired to avoid the inferences that might be drawn from his association with Webb he could have done so by keeping aloof from him. There was no error in permitting the prosecution to show

the circumstances under which plaintiff in error was arrested and where and with whom he was found at the time.

Plaintiff in error makes the somewhat novel point that the court permitted the State, in rebuttal, to prove by Robert Kenney, a schoolboy twelve years of age, and Leslie Smith, another child thirteen years of age, that there was no school being taught on the 26th day of December, 1912, in the district where Vincent McErlane and the two witnesses attended. The objection to the testimony of these boys seems to be that there might have been better evidence than the recollection of these boys of the fact involved. These witnesses were competent and they were about the age of Vincent McErlane, and we see no reason why they were not competent to testify that their school was in vacation at that time. There is nothing in the point made in regard to this testimony.

It is also urged that the court erred in permitting John L. Hogan to testify, his name not being indorsed on the indictment, and who had remained in the court room notwithstanding a rule had been entered excluding the witnesses. Hogan was the officer in charge of the court, and this fact appears without dispute from the record. It was not necessary to exclude the officer under the rule excluding the witnesses, and permitting him to testify without his name being indorsed upon the indictment and under the circumstances was no abuse of the discretion with which the trial court is clothed in matters of this sort. When Hogan was called, and before he testified, the court offered to permit counsel for plaintiff in error to interview him before he testified. The offer was rejected, and the objection to his testifying was thereupon properly overruled.

Plaintiff in error makes some other complaints of the rulings of the court in regard to the admission and exclusion of testimony, all of which have had our consideration, with the result that we do not deem them of sufficient importance to justify discussion.

Complaint is made of instruction No. 2 given on behalf of the State. That instruction defines an accessory in the language of the statute. The instruction is strictly accurate in every respect, and while, under the evidence, we see no special occasion for invoking the doctrine of the instruction, still we cannot see that any harm could have come to the plaintiff in error from giving it. The witness Hogan had testified that in the conversation between the prosecuting witness and plaintiff in error, which occurred four or five days after the arrest, the prosecuting witness said to the plaintiff in error: "You stood alongside of me here—right up close to me; you were the fellow that didn't do any of the talking, but I couldn't forget your face." It may have been to meet possible inferences from this testimony that the court thought it proper to give the instruction defining an accessory.

In his argument before the jury the attorney for the People went outside of the record to state something about the physical conditions existing at Fifty-second street and Indiana avenue, and this is complained of. The statement simply related to the connection, or want of connection, between Fifty-second street and Indiana avenue,—a matter that had not been made entirely clear by the testimony of McDonough. The statements were improper only because they were outside of the record, but it cannot be perceived how plaintiff in error was in any way prejudiced by the remark.

We find no reversible error in this record, and the judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*