## STATE v. THOMAS BARONE.[1]

December 23, 1927.

No. 26,459.

**Conviction for robbery sustained.**

[1] The conviction of defendant for robbery in the first degree, in taking by force a shotgun, the property of a corporation, from its servant during an attempt to rob the corporation of a large sum of money, is sustained by the evidence.

**Remote evidence concerning weapons was admissible.**

[2] The evidence in relation to the weapons and shells found at the time of defendant's arrest was properly received, though remote; and it was legitimate argument for the county attorney to suggest the switching or changing of weapons between companions in crime.

**No exception taken to use of word assigned as error.**

[3] No exception was taken to the use of an appellation for defendant's companions, at the time of the arrest, so as to predicate misconduct thereon.

Criminal Law, 17 C. J. p. 79 n. 73; p. 83 n. 1.
Robbery, 34 Cyc. p. 1808 n. 76, 78.

[1]Reported in 217 N. W. 104.

Defendant appealed from an order of the district court for Hennepin county, Leary, J. denying his motion for a new trial. Affirmed.

*William M. Nash* and *Chester L. Nichols,* for appellant.

*Clifford L. Hilton,* Attorney General, Floyd B. Olson, County Attorney, and *William G. Compton* and *Edward J. Goff,* Assistant County Attorneys, for the state.

Holt, J.

Defendant, convicted of robbery in the first degree, appeals from the order denying a new trial. A brief statement of the circumstances surrounding the commission of the crime will suffice for a presentation of the errors assigned.

Shortly before eight o'clock Sunday morning, November 22, 1925, defendant with two other men in an automobile attracted the attention of a police officer at the corner of Hennepin avenue and Eleventh street, Minneapolis. A minute or two later another officer on Harmon Place opposite the rear of the Minneapolis Street Railway Company's main office building, on Hennepin avenue near Eleventh street, saw three men, defendant being one of them, passing in toward the alley in rear of the building. About that time a truck with nearly $8,000, the receipts of the company's east side station of the day before, was on its way to the main office in charge of its employes Devlin and Lund, the latter driving. Inside the rear entrance, reached by three or four steps to a platform, stood Mobeck, another employe, awaiting the truck, armed with a shotgun. Nelson, still another employe, was inside toward the front of the building. Mobeck had the rear door five or six inches ajar looking towards the outside. As he so stood a man pushed the door open and entered, Mobeck taking him for a friend of Nelson. Presently another man stepped in with some remark. By that time a third appeared upon the platform, the second one pulled a revolver on Mobeck, and directed the third to take the shotgun from him; and as this was being done defendant came on the platform. Mobeck was forced to turn to the wall; his cap was pulled down over

his eyes; he was marched down to the basement with Nelson and both tied there. By that time the truck had arrived. Devlin went inside, and as Lund stepped down and toward the rear of the truck, which he had turned or backed toward the platform, a shot was fired; he saw Devlin come out and slump down at the door; the defendant, following right behind, at once fired at Lund, the bullet entering the shoulder. In the excitement the bandits fled. The inference from the record is that no property was taken except the shotgun; that Devlin died from his wound; and that defendant was indicted for his murder and acquitted. For the forcible taking of the shotgun, the property of the street car company, this conviction was had.

[1]    It is claimed that the evidence does not warrant conviction. The identification of defendant by Mobeck and Lund is positive. Both had good opportunity to observe him in broad daylight and within a distance of 12 feet. The two officers also identified him as one of the three men near the scene of the crime just prior thereto and, in all probability, on their way to commit it. We consider the evidence ample of defendant's participation in the crime. His alibi was not persuasive.

[2]    The chief complaint is that defendant did not have a fair trial. No fault could justly be urged against the prosecution until defendant's cross-examination was begun. He lived in St. Paul and owned property there. He was not arrested until July 13, 1926, in Superior, Wisconsin. The circumstances of his arrest and the evidence touching the weapons and ammunition in possession of alleged companions and himself furnish the basis for the claim of an unfair trial and give rise to the errors assigned upon the rulings of the court and upon alleged misconduct of the attorney in reference thereto. The testimony brought out as to the circumstances of the arrest are in short these:

On July 12, 1926, defendant with two companions in a Chrysler car were under observation by police officers in Superior. He was driving the same car alone the next day. He got out of it. An officer watched the car. Defendant went into a restaurant, where he

and one Smith were arrested by another officer. The ones with him the day before were McNeil and Welch, also arrested. A Smith & Wesson 38 caliber revolver was picked up in the driver's seat of the Chrysler car vacated by defendant to enter the restaurant where arrested. This was received in evidence, as were also some 38 caliber shells found on defendant's person. A 38 caliber Colt revolver taken from McNeil and one gun from Smith were offered but excluded. All were displayed in court.

Had defendant been arrested in Superior a day or two after November 22, 1925, in company with McNeil and Smith, there could scarcely be any doubt of the admissibility of all the weapons mentioned. There is a certain remoteness of time between the crime and the relevant circumstances of the arrest touched by the testimony referred to. But excluding evidence because of remoteness rests largely in the discretion of the trial court. Such evidence goes more to its weight than its admissibility. 16 C. J. § 1085. People v. Niles, 44 Mich. 606, 7 N. W. 192; Hickey v. State, 51 Tex. Cr. 230, 102 S. W. 417.

The Colt revolver found upon McNeil though offered was not received. It was testified to be a 38 caliber. A good deal of the testimony in respect to the weapons and McNeil and Smith came in as impeachment of defendant's testimony. The state proved that immediately after the shooting on November 22, 1925, fragments of bullets and one bullet, so nearly perfect that experts recognized it as a long 38 caliber bullet equally fitted to be used in the Colt found upon McNeil and the Smith & Wesson taken from the Chrysler seat which defendant occupied just before his arrest, were found below a brick wall in the rear of the street car company's main building and in line with shots fired at Devlin and Lund. Some 11 of the same sort of shells were found on defendant's person when arrested. His own expert testified from marks on the spent bullet that it had been fired from a 38 caliber Colt and not from a Smith & Wesson, the rifling of the former being the reverse of the latter.

Misconduct is alleged on the part of the state's attorney in offering especially the Colt revolver and in suggesting in his argument

how easily defendant and his companions might switch revolvers. It is not seriously contended that either the spent bullet found at the scene of the shooting or the same kind of bullets found upon defendant when arrested were not admissible. Possession when arrested of implements of crime with which the crime charged may have been committed may be shown. State v. Minot, 79 Minn. 118, 81 N. W. 753; State v. Campbell, 7 N. D. 58, 72 N. W. 935. Also the circumstances attending the arrest, including the persons then in company. People v. Scott, 261 Ill. 165, 103 N. E. 617; 16 C. J. § 1070. Defendant attempted to explain possession of the 38 caliber shells by saying that he had carried a load of alcohol in his Buick car from Minneapolis to Superior arriving there in the morning of the 13th of July; that he had one Snyder as guard who had a gun; that Snyder carried the shells in a handkerchief and asked defendant to put them in his pocket. Neither Snyder nor Miller, for whom the alcohol load was destined, were called as witnesses. Defendant also absolutely denied that he knew or was with Smith or Welch in Superior in the Chrysler car, or that he was in that car. It would seem that it mattered not very much whether or not the Colt was received as an exhibit. The testimony was in that it was found in the possession of McNeil, defendant's companion. And it does not seem to us that the suggestion of the prosecuting attorney in the argument is improper, that between companions of that sort weapons might be easily switched. Much of what was said in People v. Scott, 261 Ill. 165, 103 N. E. 617, and in State v. McClendon, 172 Minn. 106, 214 N. W. 782, is applicable to the weapons obtained and the circumstances attending this arrest as developed during the trial. A good part thereof was legitimate rebuttal of defendant's testimony.

[3] The alleged misconduct of the prosecuting attorney, in referring to McNeil, Smith and Welch, in whose company the state claimed defendant was in Superior, as the "mob," does not present anything for review by this court upon the record made. No exception to the use of the word was made until after the verdict.

We find no error in the record which calls for a new trial.

The order is affirmed.