(No. 18955.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HAROLD GODSEY *et al.*—(HARVEY MESNARD, Plaintiff in Error.)

*Opinion filed February 20, 1929.*

GROVER C. HOFF, and W. R. DEXHEIMER, (ELMER C. WEIHL, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, CHARLES EVANS, State's Attorney, and MERRILL F. WEHMHOFF, for the People.

Mr. CHIEF JUSTICE DEYOUNG delivered the opinion of the court:

Harold Godsey, Bruce Thompson and Harvey Mesnard were indicted in the circuit court of Macon county for the crime of rape upon Marie Keck, a female under sixteen years of age. The defendants were found guilty by a jury and their punishment was fixed at imprisonment in the penitentiary for one year. Judgment was rendered on the jury's verdict, and Mesnard prosecutes this writ of error.

On August 7, 1927, Harvey Mesnard, the plaintiff in error, was a painter, twenty-five years of age, and resided with his wife and two sons in the city of Decatur. Harold Godsey and Bruce Thompson were residents of the same city, unmarried, and of the ages of twenty-two and twenty-three years, respectively. Marie Keck, the prosecutrix, was fourteen, and she had a companion, Marie Betzer, who was seventeen years of age. Plaintiff in error was acquainted with Godsey and Thompson but had never met either of the young women, both of whom were unmarried. On the evening of the day mentioned, Godsey, Thompson and Marie Betzer met at a street intersection in the city of Decatur. At Miss Betzer's request Miss Keck joined them. The party first went to Miss Betzer's home, then to a vacant house in the neighborhood, and finally, between nine and ten o'clock, to the home of the plaintiff in error. Upon reaching the latter's house the two young women seated themselves in a swing at the east end of the front porch, about fifteen feet from the front door, and occupied it about a quarter of an hour. Godsey and Thompson called the plaintiff in error to the front door and engaged him in conversation. The evidence on the part of the prosecution further tends to show that Thompson rented a room on the second floor; that the young men and women went up-stairs but that the plaintiff in error did not follow them; that Thompson and Miss Betzer occupied a bed, while Godsey and Miss Keck had intercourse on the floor; that the party left the house about 4:30 A. M.; that the young men were arrested later in the morning and the young women were also taken to the police station; that Miss Keck admitted to the chief of police and the police matron that she had illicit relations with Godsey, while Miss Betzer admitted like relations with both men, and that Godsey admitted having had intercourse with Miss Betzer but not with Miss Keck.

Evidence on behalf of the defense tended to prove that after renting the room to Godsey and Thompson the plaintiff in error told them that it could be located by a light which was burning in it, and that the party of four went to the room unescorted. Godsey testified that while lying on the floor he asked Miss Keck to have intercourse with him, whereupon she asked him for two dollars and told him that she had gonorrhea. He further testified that upon receiving this information he refused to have any relations with her. He admitted that he had told the State's attorney that he had intercourse with Miss Betzer. Thompson by his testimony corroborated Godsey.

Plaintiff in error testified that he had an extra room in his house which he let to transient patrons; that on the night in question Godsey and Thompson applied for a room for themselves, and he told them that he thought he could accommodate them; that he directed them to ascend the stairway and go to the room in which a light was burning; that no charge was mentioned and they paid him no money at the time; that the front porch extended across the front of his house and there was a swing at the east end, about fifteen feet from the door where he met Godsey and Thompson; that he stood inside the front door and neither saw nor heard the young women; that he did not admit them to his house nor go up-stairs, and that after his conversation with Godsey and Thompson was concluded he returned to the kitchen at the rear of the house, where he read and talked with his wife and then retired.

The first contention made by the plaintiff in error for a reversal of the judgment is that the trial judge unduly restricted his counsel in the cross-examination of the prosecution's witnesses. The three defendants were tried together but they were severally represented. After counsel for one of the other defendants had concluded his cross-examination of a witness for the prosecution counsel for the plaintiff in error sought to cross-examine him generally.

The trial judge announced that further cross-examination would be limited to subjects concerning which the witness had not been interrogated. So far as the cross-examination of a witness relates either to facts in issue or to facts relevant to the issue it may be pursued as a matter of right, and counsel need not be confined to the precise phases of a subject introduced on the direct examination. The cross-examination should, however, be kept within fair and reasonable limits, and the extent to which it may go is largely within the trial court's discretion. (*People* v. *Andrews,* 327 Ill. 162; *People* v. *Harris,* 263 id. 406; *People* v. *Strauch,* 247 id. 220.) It does not appear that a subject within the scope of proper cross-examination was excluded. Plaintiff in error fails to show wherein he was prejudiced by the court's limitation of his right to cross-examine. Under the circumstances it cannot be said that the court abused its discretion.

It is further contended that statements or admissions made by the co-defendants of the plaintiff in error, out of the latter's presence, were incompetent as to him and that he was prejudiced by their admission in evidence. The statements or admissions of which complaint is made concerned only occurrences in the room and did not purport to implicate the plaintiff in error as an actual participator in them. He was prosecuted as an accessory. Without proof of the commission of the offense charged by one or both of his co-defendants he could not be convicted as such. There can be no accessory without a guilty principal. (1 Bishop on Crim. Law,—9th ed.—sec. 666.) The prosecution sought to prove that the plaintiff in error was an accessory to the perpetration of the crime by evidence of the facts and circumstances surrounding the letting of the room. If the confederacy of an accessory with the principal is proved, then the acts and declarations of either are admissible against the other. Hence the statements ad-

mitted were not objectionable on the ground that they were made out of the presence of the plaintiff in error.

A witness who had measured the front porch of the house of the plaintiff in error remained in the court room after the trial judge, at the request of the defendant's counsel, had ordered that the witnesses be excluded therefrom. When the defense called this witness to testify concerning the size of the porch the prosecution invoked the rule of exclusion and the court refused to allow him to testify. Following this refusal, the court, over the objection of the defense, permitted Miss Keck, the prosecutrix, to testify in rebuttal notwithstanding the fact that she had remained in the court room after her examination in chief had been concluded. The plaintiff in error complains that these rulings were inconsistent and prejudicial. Whether a witness who has remained in the court room in violation of an order of exclusion will be permitted to testify is within the court's discretion, and unless there has been a clear abuse of that discretion the court's action is not subject to review. (*People* v. *Scott,* 261 Ill. 165; *Bow* v. *People,* 160 id. 438; *Bulliner* v. *People,* 95 id. 394.) There could be little, if any, controversy concerning the testimony of a witness who had made exact measurements of the porch, while the testimony of Miss Keck concerned matters which were in dispute. There was less likelihood that the testimony of other witnesses would have influenced the former than the latter. The excluded witness should have been permitted to testify. His exclusion, however, does not, under the facts of the case, require a reversal of the judgment.

Remarks by the trial judge and his criticisms of counsel for the plaintiff in error during the trial, it is contended, were highly prejudicial to the plaintiff in error. Miss Keck was asked on cross-examination when she first understood the meaning of the word intercourse, and she answered, "For about two years." She was then asked if that was about the time she began to have intercourse with men.

There had been no testimony that she had ever had sexual relations with any man except at the time the instant offense was committed. The court properly sustained an objection to the question, but added: "Now, Mr. Hoff, you have forfeited all the rights a man ever had in a court room to ask that question." When counsel excepted and stated that the ruling was prejudicial the court remarked that counsel had brought it out, to which counsel replied that he had a right to do so. The court then stated that counsel had no right to ask the question and that he knew it. A question improper in form followed, after which counsel asked the same witness whether the plaintiff in error had intercourse with her on the night in question. Without an objection by the prosecution the court said, "Don't answer these questions. Objection sustained." The witness was then asked whether the plaintiff in error aided, abetted or encouraged the immoral relations which she had with Godsey. An objection to the question was sustained. The question followed, "What did Harvey Mesnard do there that night with reference to the intercourse you had with Godsey?" Again an objection by the prosecution was sustained. When counsel asked, "Did Harvey Mesnard do anything—" the court interrupted with the statement, "If you have any other questions to ask this witness you may do so, otherwise this witness will be withdrawn from the stand." Counsel then said, "I don't understand the ruling of the court. I have a right on behalf of the defendant—" Before counsel could proceed the court ordered him to sit down. Counsel then continued, "If I am not going to be permitted to ask any questions—," but the court again interrupted him and said, "You are not being prohibited from asking questions, but you are being prohibited from asking improper questions." Counsel replied, "I don't know that they are improper. If I haven't the right to ask questions not fully covered—," but the court once more interrupted him, stating, "You will be taken from the court room, Mr.

Hoff, if you don't stop talking; go ahead and ask your questions." Exceptions to the court's remarks and rulings were taken by the plaintiff in error. It is unnecessary to comment upon all of the discourse between court and counsel. Objectionable questions are often asked witnesses in the trial of a lawsuit, and it is the province of the court to rule upon objections to such questions. An attorney who attempts to prejudice the jury against a party or witness may deserve a rebuke by the court. (*People* v. *Mc-Geoghegan,* 325 Ill. 337.) Where, however, it is not apparent that counsel has knowingly transgressed the bounds of proper examination or cross-examination, care should be exercised by the judge, in ruling upon objections, not to convey to the jury the impression that he favors one side as against the other. (*People* v. *Schultz,* 300 Ill. 601.) Counsel for the plaintiff in error may have been unduly persistent in asserting his supposed rights, but his statements evince a zeal to perform what he believed to be his duty rather than bad faith or deliberate misconduct. To declare that an attorney, by asking an objectionable question, has "forfeited all the rights a man ever had in a court room" is an unjustified rebuke, and for excessive zeal or an error in judgment counsel should not be threatened with removal from the court room.

In a case of this character the jury may easily be influenced by a manifestation of the court's attitude toward the defendant or his counsel. Certain facts and circumstances shown by the evidence must not be ignored. When application was made for the room the plaintiff in error was not brought face to face with the two young women. There was no light on the first floor of the house save in the kitchen, three rooms removed, and the only other light in the vicinity was one at the street intersection, between which and the house of the plaintiff in error stood two or three other houses. The plaintiff in error was engaged in conversation with the two young men at the time, and while

so engaged the young women were seated in the swing, fifteen feet away, in unlighted surroundings. Even if the porch had been lighted, the plaintiff in error, who stood inside the front door, could not have seen them. There is no claim that he met the young women or that he entered the room on the second floor, and all the witnesses agreed that he had no sexual relations with either of them. When the evidence is considered it cannot be said that the court's attitude toward counsel for the plaintiff in error, manifested in the presence of the jury, did not influence them to return a verdict finding the plaintiff in error guilty.

The judgment of the circuit court of Macon county is reversed and the cause is remanded to that court for a new trial.

*Reversed and remanded.*