The People of the State of Illinois, Plaintiff-Appellee, *v.* Ezell O. Jenkins, Defendant-Appellant.

(No. 56814;

First District (Second Division)—February 27, 1973.

Gerald W. Getty, Public Defender, of Chicago, (Michael Henshaw, Shelvin Singer, and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

William J. Scott, Attorney General, of Springfield, and Edward V. Hanrahan, State's Attorney, of Chicago, (James B. Zagel, Assistant Attorney General, and Robert A. Novelle and Robert Best, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

Defendant was charged with armed robbery, convicted by a jury and sentenced to serve 10 to 20 years. He appealed directly to the Supreme Court. Claiming that a substantial constitutional question was involved, defendant presented two issues.[1] (1) Whether he was deprived of the right to call his wife as a witness in his defense. (2) Whether the trial court erred in admitting into evidence defendant's oral confession without a prior determination that it was voluntary.

After briefs were filed, however, the case was transferred to this court for disposition. In this appeal, defendant does not question the sufficiency of the evidence that convicted him. Instead, he raises issues from two incidents that occurred during his trial. Therefore, except where necessary, we will not state the facts which led to defendant's indictment. We proceed directly to the two incidents.

The first occurred at the beginning of defendant's trial. After examining a witness, the State moved for exclusion of all witnesses from the courtroom. The motion was granted but defendant's counsel asked that defendant's wife be permitted to remain in the courtroom. The request was denied. A short time later, defendant's wife returned to the courtroom and his counsel told the court that she had refused to be a witness because she wanted to hear her husband's trial. After an exchange between court and counsel, defendant's wife remained in the courtroom and was not called as a defense witness.

Defendant contends that under the sixth amendment to the Federal constitution and article II, section 9 of the Illinois constitution, he had the right to call witnesses in his favor and the right to a public trial, one that allowed him to have his wife and relatives in the courtroom during his trial. To support his contention, defendant relies on the decisions in *In re Oliver* (1948), 333 U.S. 257, 92 L.Ed. 682, 68 S.Ct. 499; *People v. Jelke* (1954), 308 N.Y. 56, 123 N.E.2d 769, and *State v. Jordan* (1921), 57 Utah 612, 196 P. 565. Citing *Simmons v. United States* (1968), 390 U.S. 377, 19 L.Ed.2d 1247, 88 S.Ct. 967, defendant argues that the order excluding witnesses compelled him to surrender one constitutional right in order to assert another: he was forced to surrender calling

---

[1] Without changing their meaning or importance, we have rephrased the issues and inverted the order in which they appear in defendant's brief.

his wife as a witness in order to enjoy his right to have her present in court during his trial. Therefore, defendant attacks the order excluding witnesses and contends that it deprived him of the constitutional right to call his wife as a witness in his defense.

■■■ Ever since Daniel confounded the Elders by examining one out of the presence of the other and proving that they had given false testimony against Susanna, it has been thought prudent to exclude witnesses from the presence of each other before they testify.[2] This prudence has evolved the rule that a trial court has the power to exclude witnesses during the trial of a case and to direct that they shall be examined out of the hearing of each other. (23 C.J.S. *Criminal Law* § 1010.) Exercise of this power does not infringe on a defendant's right to a public trial. (*People v. Hagan* (1969), 24 N.Y.2d 395, 248 N.E.2d 588; 23 C.J.S. Criminal Law § 963(5).) In this State, consistent with this rule and the wisdom it reflects, the exclusion of witnesses is a matter within the sound discretion of the trial court; and exercise of such discretion will not be disturbed on appeal unless a clear abuse or prejudice to the defendant is shown. *People v. Chennault*, 24 Ill.2d 185, 187, 181 N.E.2d 74; *People v. Marshall*, 74 Ill.App.2d 472, 221 N.E.2d 128.

■■ In this case, the trial court exercised its discretion and ordered the exclusion of all the witnesses who were going to testify. This order was proper. (See *United States ex rel. Corby v. Conboy* (S.D. N.Y. 1971), 337 F.Supp. 517; *People v. Godsey*, 334 Ill. 11, 16, 165 N.E. 178.) The order did not force defendant to surrender his right to call his wife as a witness in order that he could assert his right to have her present in the courtroom. (*Taylor v. United States* (9 Cir. 1967), 388 F.2d 786; see Annot., 14 A.L.R.3d 16.) Therefore, we conclude that the order excluding witnesses did not deprive defendant of the right to call his wife as a witness in his defense.

The second incident occurred when the State called policeman Joseph Mullen as its last witness. Preliminary questions disclosed that at about 3:00 A.M. of the morning that defendant was arrested, he had a conversation with Mullen in a Chicago police station. Mullen was asked about the conversation. Defendant's counsel objected and the trial court sustained the objection with an admonition that the assistant State's Attorney rephrase the question and lay the proper foundation. Defendant's counsel then requested a hearing outside the jury's presence.

---

[2] In the Apocrypha, The Story of Susanna and the Elders is perhaps the first recorded instance of a motion to exclude witnesses. See May and Metzger, *The Oxford Annotated Bible with the Apocrypha*, p. 213 (Revised Standard Version 1965); Metzger, *An Introduction to the Apocrypha*, p. 107 (1957); London, *The World of Law*, Vol. I, p. 5 (1960); 6 Wigmore, Evidence § 1837 (3d ed.).

In a side-bar conference that followed, counsel stated the grounds for his objection. He said, "I will quote from 'Miranda versus Arizona,' which requires him to establish the voluntary nature of all constitutional rights before statement is admitted into evidence. The burden is on him [sic]." The trial judge said, "Overruled. You laid a proper foundation, the time and place. Proceed. The motion is denied."

Then, in the presence of the jury, Mullen testified that before asking defendant questions concerning the armed robbery, he informed him of his constitutional rights. Mullen said he told defendant that he had the right to remain silent; that if he spoke or said anything, it could be used against him in a criminal prosecution; that he had the right to have a lawyer present and if he could not afford one, one would be appointed for him. Defendant, according to Mullen, manifested an understanding of the constitutional warnings. Mullen said that defendant then told him he had taken part in the armed robbery and gave the details of his participation.

After Mullen's testimony, the State rested its case. Defendant's counsel, having reserved the right to make an opening statement, told the jury that defendant was going to testify and tell of his participation in the armed robbery. But, as an affirmative defense, defendant was going to show that he was a narcotic addict who, at the time of the robbery, was under the influence of drugs that compelled him to participate in the crime. Defendant was called as his first witness and told the jury of his narcotic addiction and how he participated in the armed robbery. In addition, two of his sisters testified concerning his narcotic addiction. Then, after rebuttal and the State's opening summation, defendant personally made the final defense argument to the jury. He again told what he did; and in describing the conduct of the persons who were robbed, he said, "[e]veryone started from the rear door. Customers and people that was—I was sticking the shop up—they started out the back door, so did I [sic]."

Defendant contends that the trial court committed error when, over his objection, it admitted the testimony of Mullen without requiring the State to prove, outside the jury's presence, that the confession about which Mullen testified was voluntary and was obtained in compliance with *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602. Defendant argues that once he objected to Mullen's testimony, the trial court had the duty to adjourn the trial and conduct a separate hearing to determine whether his confession was voluntary and was obtained under circumstances that respected his constitutional rights. The State, on the other hand, contends that defendant voluntarily testified in order to interpose the defense that he participated in the armed rob-

bery under compulsion of narcotic addition. Therefore, since he reiterated to the jury what Mullen said was his confession, defendant was not prejudiced by Mullen's testimony despite the objection that was made.

In *People v. Jackson,* 31 Ill.2d 408, 410, 202 N.E.2d 465 the Supreme Court held that a defendant's objection to the admission in evidence of a confession on the ground that his constitutional rights were not explained to him, was sufficient to call for a hearing to determine whether the confession was voluntary. In *People v. Mosley,* 100 Ill.App.2d 361, 364, 241 N.E.2d 476, we held that when a defendant moves to suppress a confession on the ground that it was involuntary, the trial court must conduct a hearing in which the State must prove, by a preponderance of the evidence, that the confession was voluntary even if the defendant does not request a hearing. Therefore, we conclude that it was error for the trial court to overrule defendant's objection to Mullen's testimony without a hearing outside the jury's presence concerning the voluntariness of his confession. We must decide, however, whether in this case the error was harmless. Defendant insists that the error has to be harmless beyond a reasonable doubt. *Chapman v. California* (1967), 386 U.S. 18, 17 L.Ed.2d 705, 87 S.Ct. 824; *Harrington v. California* (1969), 395 U.S. 250, 23 L.Ed.2d 284, 89 S.Ct. 1726.

We bear in mind that defendant does not question the sufficiency of the prosecution's evidence. He was arrested near the scene of the robbery. On his person were found a gun, a police badge; and three victims of the robbery unhesitatingly identified him as the man who used the gun and badge to terrorize them. Defendant does not deny that before he confessed to Mullen he was informed of his constitutional rights. Nor does he claim that his confession was coerced by anyone. Moreover, defendant, of his own volition, insisted on talking to the jury in summation and, concerning the robbery, telling them that he "was sticking the shop up."

■■■ The record clearly indicates that defendant was not compelled to testify because of the confession that Mullen described. (Compare *Harrison v. United States* (1968), 392 U.S. 219, 20 L.Ed.2d 1047, 88 S.Ct. 2008; *Collins v. Brierley* (W.D. Pa. 1971), 336 F. Supp. 1024.) Defendant voluntarily took the witness stand in order to support his theory of defense; and in doing so, reiterated the substance of his confession. It has been held in this and in other jurisdictions that when a defendant takes the witness stand and reiterates under oath matters contained in a statement or confession he has given the police, he is not prejudiced by admission in evidence of that statement or confession and cannot claim constitutional privileges he voluntarily waives by testifying. (*People v.*

*Coddington*, 123 Ill.App.2d 351, 259 N.E.2d 382.)[3] Therefore, we conclude that under the circumstances of this case, the error committed by the trial court in admitting evidence of defendant's confession, without a determination of its voluntariness outside the jury's presence, was harmless beyond a reasonable doubt. The judgment is affirmed.

Affirmed.

SCHWARTZ and McGLOON, JJ., concur.

---

[3] For cases of other reviewing courts, see *Sweeney v. United States* (9 Cir. 1969), 408 F.2d 121; *Chandler v. State* (1968), 283 Ala. 29, 214 So.2d 306; *Commonwealth v. Chase* (1966), 350 Mass. 738, 217 N.E.2d 195; *State v. McGee* (Mo. 1969), 447 S.W.2d 270; *Cooper v. State* (Fla.App. 1972), 261 So.2d 859; *State v. Fouquette* (1950), 67 Nev. 505, 221 P.2d 404; *Commonwealth v. Collins* (1969), 436 Pa. 114, 259 A.2d 160; *Miller v. State* (Cr. App.Tenn. 1970), 452 S.W.2d 369; *Evans v. State* (Cr. App. Tex. 1972), 480 S.W.2d 387.