29323.   CARGILE v. THE STATE.
29324.   STEPHENS v. THE STATE.

DECIDED JULY 15, 1942.

*W. E. Armistead, Edwin S. Kemp,* for plaintiffs in error.
*Roy Leathers, solicitor-general,* contra.

BROYLES, C. J.   F. C. Cargile and E. L. Stephens were separately indicted for the offense of malpractice in office.   Each indictment contained five counts.   The defendants were tried separately.   In each case demurrers, general and special, were interposed to each count of the indictment.   All of the demurrers were overruled, except the special demurrer attacking the allegation in each count that the specified acts of the defendant were conduct "unbecoming the character of an upright county commissioner," and the special demurrer interposed to the charge that the defendant voted to pay and did pay the county police.   Those special demurrers were sustained.   Pendente lite exceptions were filed to the judgment overruling the other demurrers.   Upon the trials, each defendant was found guilty on counts 1, 2, and 5 of the indictment, and not guilty on counts 3 and 4.   Each defendant was fined $25 and removed from his office of county commissioner. Each defendant filed a motion for new trial which was overruled, and that judgment is assigned as error in each bill of exceptions.

The two indictments, the demurrers interposed thereto, the evidence in the two cases, and the grounds of the motions for new trial, are substantially identical, any differences being inconsequential to the determination of the controlling issues in these cases. Since the defendants were found not guilty on counts 3 and 4, those counts and the demurrers thereto will not be considered.   In each indictment the accused was charged with the offense "mal-

practice." However, the facts stated in the indictments clearly show that the defendants were charged with the offense of malpractice in office; and it is well established by numerous decisions of the Supreme Court and this court that the *name* of a crime given in an indictment does not determine the offense alleged to have been committed by the accused, but the offense is determined by the facts stated in the indictment. Moreover, the indictments were not demurred to on this ground. The indictments were drawn under the Code, § 89-9907, which reads as follows: "Malpractice, oppression, and tyrannical partiality.—Any ordinary, member of any board of commissioners, county judge, or justice of the peace, who shall be charged with malpractice in office, or with using oppression or tyrannical partiality, or with wilfully refusing or failing to preside in or hold his court at the regular terms thereof or when it is his duty under the law to do so, or with using any other means to delay or avoid the due course or proceeding of law, or with any other conduct unbecoming the character of an upright magistrate, or who shall wilfully and knowingly demand more cost than he is entitled to by law, in the administration and under color of his office, shall be punished as for a misdemeanor and shall be removed from office."

Count 1 of each indictment charged that the accused, in Clayton County, Georgia, on November 20, 1939, then and there being a member of the board of commissioners of said county, and while acting in his official capacity and in the administration and under the color of his office, did pay to E. L. Adamson, the sheriff of the county, certain large sums of money out of the funds of the county (the exact sums being specifically set forth in the indictment). The count charged that said payments were illegal and contrary to law because the sheriff was then and there on the fee system, and that said payments to him were in addition to his lawful fees, and that the unlawful acts of the accused were means to delay and avoid the due course and proceedings of the law, and were tyrannical partiality in the administration and under color of his office. Count 2 of each indictment (formal parts omitted) charged that the accused did contract with the sheriff to pay him, and did pay him, other and greater fees than were allowable by law for collecting tax executions. (The amount of the fees collected and the number of the various tax receipts were set forth in detail in the

indictment.) Count 5 of each indictment (formal parts omitted) charged that the accused did contract with H. Grady Moore, a commissioner of Clayton County, acting in his individual capacity as the administrator of the estate of his deceased father, for work to be done and supplies to be furnished for Clayton County, and that said work and supplies were not let at public outcry to the best bidder as required by law. (The work and supplies were set forth in detail in the indictment.) The count further charged that the accused paid said Moore out of the funds of Clayton County for such work and supplies, and set forth in detail the amounts so paid. All three of the counts charged that the alleged unlawful acts of the accused were committed in the administration and under color of his office as a county commissioner; were done to delay the due course and proceedings of the law, and amounted to tyrannical partiality.

The general demurrers in each case to counts 1 and 2 are substantially identical. They allege that malpractice is not a crime under the laws of this State; that paying salaries to the sheriff is not a crime, said contract to so pay being merely void, and for which a civil remedy is provided; that the allegations of counts 1 and 2 do not charge any offense under the laws of this State. Counts 1 and 2 of the indictment are not subject to any of the general demurrers interposed. In answer to a question certified by this court in this case to the Supreme Court, that court ruled as follows: "Malpractice in office relating to county commissioners, as used in the Code, § 89-9907, means a wrongful or unjust doing of an act which the doer has no right to do, or failure to do what the law makes it his duty to do, with evil intent or motive or due to culpable neglect. The statute making malpractice in office a penal offense must be construed in connection with the laws defining the official's duties together with the Code, §§ 26-201, 26-404, 27-2509, and 89-9908. When thus construed, the statute is made sufficiently definite to meet the requirements of a valid penal law." For the full opinion of the Supreme Court see *Cargile* v. *State,* 194 *Ga.* 20 (20 S. E. 2d, 416). The acts of the defendants in paying the sheriff a salary and fees in addition to his lawful fees, as charged in counts 1 and 2 of each indictment, were clearly illegal and unlawful and amounted to malpractice in office. "Any public officer who shall charge or take fees not al-

lowed by law . . shall, on conviction or proof thereof, be dismissed from office." Code, § 89-702. It follows that any county commissioner who knowingly and wilfully assists another public officer in charging and receiving unlawful fees is guilty of malpractice in office and of violating the provisions of section 89-9907.

In each case the general demurrers to count 5 of the indictment are substantially the same. Some of them are similar to those interposed to counts 1 and 2. Another demurrer alleges that the count attempts to charge the accused with an offense under the general laws of this State, to which he is not subject or acting under, by reason of the fact that he is subject to and answerable only under a special local law which takes precedence over the general law under which this indictment is brought, for the reason that the general law does not require that this type of contract, as alleged, be let at public outcry to the highest bidder.

This court certified to the Supreme Court the following question in this case: "Where A, a county commissioner of Clayton County, Georgia, acting as such commissioner and under color of his office, unlawfully and illegally contracts with B, another county commissioner of said county, or with a person related to B, for work to be done and supplies to be furnished said county, without letting out said work and said supplies at public outcry to the best bidder, such contract being in violation of the provisions of section 12 of the act creating the Board of Commissioners of Clayton County (Ga. Laws 1910, p. 256), but said act not providing any punishment for the violation of any of its provisions, and said illegal contracting not having been specifically declared a criminal offense by any statute of this State, is A, because of said illegal contracting, subject to indictment under the Code, § 89-9907, for the offense of malpractice in office?" The Supreme Court answered the question in the affirmative. In that case the court further said that since the Code, § 89-9907, makes malpractice in office "a criminal offense punishable by the infliction of the penalties therein prescribed, it must be tested by the rule of strict construction applicable to criminal statutes. However, in applying this rule the plain meaning of language must not be disregarded, but will be given full effect. The word 'malpractice' means evil, bad, or wrong practice. . . When applied as in the present statute to public officers and restricted to official acts by the words 'in office,' it re-

tains its meaning of bad or evil, and this is applied to official acts instead of to the professional practices as when used in statutes relating to the professions. . . Violations of official duties are usually defined as 'malfeasance in office.' But the true meaning of 'malfeasance' and 'malpractice' is substantially the same. 'Malfeasance' means evil acts or doings; 'malpractice' means evil practices, acts or doings. In Commonwealth *v.* Wood, 116 Ky. 748 (76 S. W. 842), the court defined malfeasance in office to be 'the wrongful or unjust doing of some official act which the doer has no right to perform, or which he has stipulated by contract not to do, [but] it is essential that an evil intent or motive must accompany the act, or that it must have been done with such gross negligence as to be equivalent to fraud.' This definition of malfeasance in office may appropriately be given to the term 'malpractice in office' as used in our Code section. It is apparent that the legislature intended by this enactment to require faithfulness to public trust upon the part of the officials therein named. To secure this conduct the officials not only are required to perform the acts required of them by law, but are equally forbidden to commit under the color of office acts not authorized by law. . . One other attack has been made upon this Code section. It is not therein provided that the penalties prescribed shall be inflicted upon those found guilty after trial of a violation thereof, but it is declared that any of the officers there named who 'shall be charged with malpractice in office [etc.] . . shall be punished as for a misdemeanor and shall be removed from office.' . . It would have been better if the law had used the words 'convicted of' instead of 'charged with,' but the language employed does not invalidate the law. This law must be construed in connection with another section of the Code. (§ 27-2509), which declares that 'the punishments prescribed by this Code shall be inflicted only upon a legal conviction in a court having jurisdiction.' When thus construed the section means that any of the officers charged with the offense therein named shall, upon a legal conviction in a court having jurisdiction, be punished as for a misdemeanor and removed from office."

Moreover, as pointed out by this court in *Kent v. State,* 18 *Ga. App.* 30 (8) (88 S. E. 913), the original act from which this section (89-9907) was codified provided specifically that before one

could be punished under the act he must be tried and convicted by a petit jury. "This act appeared as section 4391 in the Code of 1863. It was amended by the act of February 23, 1866 (Acts 1865-6, p. 233), and, as amended, was put into the Code of 1868. It was again amended in 1873 (Acts of 1873, p. 23), and appeared as sections 4504 and 4505 respectively in the Codes of 1873 and 1882. In all of these Codes the provision as to a jury trial was retained. The provision was, without any authority, omitted from the Codes of 1895 and 1910." It was also omitted, without any authority, from the Code of 1933. It is well settled that where Code sections are incomplete or ambiguous they must be considered in connection with the original acts. *Smith* v. *Evans,* 125 *Ga.* 109 (53 S. E. 589), and cit.; *Kent* v. *State,* supra. In each case, the general demurrers to count 5 of the indictment were properly overruled.

We will now consider the special demurrers interposed to counts 1, 2, and 5 of the two indictments. In each case the special demurrers are substantially identical. It must be remembered that the judge in each case sustained the special demurrer to the allegations in count 1 of the indictment that referred to the payment of county policemen; and that in each case he also sustained the special demurrers to the allegations, in counts 1, 2, and 5, that all the said acts of defendant were conduct "*unbecoming the character of an upright county commissioner.*" The words in italics were stricken by the court, leaving the following allegation: "That all the said acts of defendant were conduct and were means to delay and avoid the due course and proceedings of the law, and was tyrannical partiality in the administration and under color of defendant's office." That allegation was specially demurred to on the grounds that its words "are applicable only to county judges, justices of the peace, and ordinary, and are not applicable to county commissioners." The allegation was further demurred to on the ground that "said words are mere surplusage, . . and are improperly included in any charge against a county commissioner."

It is true that in *Smith* v. *Duggan,* 153 *Ga.* 463 (112 S. E. 458), the court in its opinion made the following ruling: "Only a portion of section 295 of the Penal Code [now embodied in the Code, § 89-9907] is applicable to county commissioners. . . The section, omitting the parts inapplicable, provides as follows: 'Any

. . member of any board of commissioners . . who shall be charged with malpractice in office . . shall be punished as for a misdemeanor, and shall be removed from office.' " In that case twenty-six freeholders of Wilkinson County petitioned the judge of the superior court to remove two named county commissioners from their offices because of certain alleged illegal acts committed by them while acting as county commissioners. The petition was demurred to on the ground that the act of 1909, creating the board of commissioners of Wilkinson County (Ga. Laws 1909, p. 483), was in conflict with certain specified articles of the constitution of Georgia. The trial judge sustained the demurrer and dismissed the petition. The Supreme Court reversed that judgment. As stated in the opinion, the proceeding was a civil, and not a criminal, case. A reading of the entire opinion, and of the facts of the case as stated therein, discloses that it was unnecessary for the court, in determining that the act in question was not unconstitutional, to rule that only a certain named "portion of section 295 of the Penal Code [Code, § 89-9907] is applicable to county commissioners." It follows that the ruling is obiter dictum and is not binding as a precedent on this court. Possibly, such a drastic limitation of the Code section might apply to some county commissioners, but it obviously is not applicable to the commissioners of Clayton County.

In the act under consideration in *Smith* v. *Duggan,* supra, the county commissioners were not given the broad powers bestowed on the commissioners of Clayton County, and especally they were not given the specific authority "to hold court and to try road defaulters in accordance with the law," as were the commissioners in the instant case. In deciding *Smith* v. *Duggan,* supra, if it were necessary for the Supreme Court to limit the provisions of Code § 89-9907 as applying to the commissoners of Wilkinson County, it was obviously unnecessary for the court to rule further, in effect, that such limitation applied to all county commissioners, irrespective of what duties and authority were given them in the various acts creating county commissioners. Furthermore, in the instant case, the words attacked by the special demurrer were mere surplusage, and it is so admitted in the demurrer. It is not even alleged in the demurrer that the words were prejudicial to the defendant's cause. Therefore, under the facts of the case, the over-

ruling of the demurrer, if technically an error, was harmless and does not require another hearing of the case. "It is well settled that the erroneous overruling of a special demurrer is not harmful error where it affirmatively appears from the evidence in the case that the error did not result in injury to the party interposing the demurrer, and 'In determining whether the error has resulted in injury, the court may look to the record as a whole.' *Hall* v. *State*, 8 *Ga. App.* 747 (3), 750-752 (70 S. E. 211)." *Coffee County* v. *Denton*, 64 *Ga. App.* 368, 372 (13 S. E. 2d, 209).

In the case at bar the evidence offered in support of counts 1, 2, and 5 (the counts on which the defendants were convicted) related to only the following unlawful acts of the accused: (1) Paying to the sheriff of the county certain specified sums of money out of the funds of the county in addition to his lawful fees as sheriff. (2) Paying to said sheriff other and greater fees than were allowable by law for collecting tax executions. (3) Contracting with another county commissioner (acting in his individual capacity as the administrator of his deceased father) for work to be done and supplies to be furnished for the county, without letting out said work and supplies at public outcry to the best bidder as required by law. The evidence was confined to these three acts, and did not refer to any other act of the accused as constituting oppression or tyrannical partiality, or the using of any other means to delay or avoid the due course or proceeding of law. Under the law, each of the three acts of the accused set forth in the indictment amounted to malpractice in office, and the further allegations in the indictment that the acts "were means to delay and avoid the due course and proceedings of the law and were tyrannical partiality" were mere surplusage, and were not harmful to the defendants. The other special demurrers to counts 1, 2, and 5 of the indictments are without merit.

A careful study of the record convinces us that the defendants had a fair trial and that the verdicts were authorized by the evidence, and that none of the special grounds of the motions for new trial shows cause for a reversal of the judgments.

*Judgments affirmed. MacIntyre and Gardner, JJ., concur.*