# CLARENCE PURVIANCE *v.* STATE OF MARYLAND

## [No. 10, October Term, 1945]

*Decided November 2, 1945.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, HENDERSON, and MARKELL, JJ.

*S. Alfred Mund,* with whom was *Charles J. Stinchcomb* on the brief, for appellant.

*J. Edgar Harvey, Assistant Attorney General,* with whom were *William Curran, Attorney General, J. Bernard Wells, State's Attorney for Baltimore City,* and *Bernard G. Peter, Assistant State's Attorney,* on the brief, for appellee.

COLLINS, J., delivered the opinion of the Court.

On January 23, 1945, Sergeant Thomas P. Joyce and Officer James Hines of the Baltimore City Police Department at about 12:10 P. M. were walking through the 1400 block of Hemple Court or Alley in Baltimore City. Sergeant Joyce saw the defendant, Clarence Purviance, appellant here, come out of 1426 Hemple Court and start walking east through the Court about ten or fifteen feet in front of the officers. Officer Hines testified that Purviance was walking toward them. When the defendant saw the officers, he hurriedly walked away from them and ran to the corner. Sergeant Joyce testified that before defendant reached the corner he put his hand into his overcoat pocket as if to pull something out and "started to draw it out and ran around the corner." As the officers rounded the corner, they saw the defendant walking away from the rear fence of 1424 Hemple Court,

which was adjacent to a vacant lot. Officer Hines ran quickly past Sergant Joyce and Purviance and looked over the fence. The yard was filled with snow and Hines saw pink number slips lying on top of a white envelope. Officer Hines then quickly called Sergeant Joyce and told him the slips were in the yard. Officer Hines jumped over the fence and picked up the slips which were conventional lottery tickets with Station Nos. 10 and 894 on them and which were perfectly dry. Some were on top of the white envelope and some were inside. Sergeant Joyce then placed Purviance under arrest as the defendant walked toward him and while Officer Hines was on the other side of Purviance, and asked him why he went around the corner. Purviance told them that he went around there to urinate. Although snow was on the ground, there was no evidence that any such act had been committed there, and if such an act had been committed, it would have shown on the snow. When he was searched by the officer, nothing was found on him.

At the trial in the Criminal Court of Baltimore City, before the Court without a jury, where the defendant plead not guilty, he was convicted on the second count of the indictment charging him with having lottery tickets in his possession. After the refusal of a motion for a new trial and after judgment and sentence, he appeals to this Court.

The case comes here on exceptions to the evidence. The fifth exception was taken when the lottery tickets heretofore referred to were admitted in evidence, and the seventh exception was taken upon the refusal of the trial court to strike out all evidence as to the lottery tickets. In the case of *Goldstein v. State* (*Bevans v. State*), reported as a memorandum in 179 Md. 697, and in full in 22 A. 2d 471, a burglary had been committed in the neighborhood, and the defendants were followed by police officers in the night time in a radio car. As the car overtook them, two men turned toward an open lot and threw something to the ground. After the men had been

arrested and placed in the car, one officer looked back on the lot about five feet away and found a pair of brown cotton gloves and a set of approximately twelve skeleton keys. An exception was taken to the admission of these and other objects in evidence. Chief Judge Bond, speaking for the Court in that case, at page 472 of 22 A. 2d, said: "But the court considers the connection sufficiently evidenced for that purpose. Nothing was lacking to a complete showing of connection except testimony that the men had the articles in their possession previously. Probability is the only requirement, however, and here the probability amounts to little short of certainty. And if there was any room for doubt, the decision was one on the weight of the evidence, not on any question of admissibility." In the case now before this Court, although the defendant was not seen actually to throw the lottery tickets where they were found, his actions in placing his hand in his overcoat pocket as if to pull something out, running around the corner, and walking away from the fence near the spot where the dry lottery tickets were found in the snow, and his statement as to why he went near the fence, which is convincingly contradicted, amount to probability that he had the lottery tickets in his possession, the weight of the evidence being a question for the Court sitting as a jury in this case.

The appellant relies strongly on the case of *Sugarman v. State*, 173 Md. 52, 195 A. 324. In that case it was admitted that the arrest, at the time and immediately after which the lottery tickets were found in the gutter near where the accused had been, was invalid. In the case at bar the offence, if any, was committed in the presence of the officers who made the arrest. The evidence was such to justify the belief of a careful and prudent person that the crime charged had been committed. It was said in *Silverstein v. State*, 176 Md. 533, at page 538, 6 A. 2d 465, at page 467: "All of these facts and circumstances were observed by the officer, and were of such a nature as would justify a careful and prudent person in the belief that a crime against gambling as

denounced by the statute had been committed in his presence or view by the proprietor and his clerk, and that it was his duty to make their arrest without a warrant." *Mitchell v. Lemon,* 34 Md. 176, 180, 181; *Callahan v. State,* 163 Md. 298, 301, 162 A. 856; *Romans v. State,* 178 Md. 588, 600, 16 A. 2d 642. We must therefore conclude that the exceptions 5 and 7 were not well taken.

The first exception was taken when Sergeant Joyce was asked whether he knew anything more about Station Nos. 10 and 894. It was evident that the defendant objected to this question. The Court admitted it subject to exception. Sergeant Joyce then testified that Station No. 894 shows, in a book not officially required but kept by the Police Department, that it was found in the work of Clarence Purviance in his home at 1420 Hemple Court when he was arrested on December 8, 1943. Also Station Nos. 10 and 894, the same two stations found on the lottery tickets in the yard at the time of his arrest, were the same as were found in his work when his house was raided. This answer was admitted subject to special exception, and defendant made the motion to strike out this testimony, which the Court overruled. As Sergeant Joyce was not present at the arrest of the defendant on December 8, 1943, and as he did not make the entry in the record book himself, and it was not made in his presence or under his direction, this testimony was clearly hearsay and not admissible at that time, and the exception was well taken by the defendant. *Hoogewerff v. Flack,* 101 Md. 371, 382, 61 A. 184.

As the question, the subject of the second exception, was not answered, no injury resulted to the defendant, and it is not necessary that we pass upon this exception.

The third and fourth exceptions were taken when Officer Bees testified that he was present when the defendant was arrested at his home, 1426 Hemple Court, on December 8, 1943, and that he made the record himself in the book at the Police Department in his own handwriting, that the station numbers that were taken from the lottery tickets at that time, Station 10 and Station

894, are two of the station numbers that were found in the defendant's work on January 23rd, and that the man arrested at that time was Clarence Purviance who was the same person on trial in this case. The record book was then offered in evidence over objection and exception, and the sixth exception was taken to the refusal of the trial court to strike from the record all information contained in the record book. The record book offered in evidence shows the station number on lottery tickets, the name of the person accused of having such lottery tickets in possession, and the date. In the case of *Owens v. State,* 67 Md. 307, at page 312, 10 A. 210, 302, at page 212, the Court said in reference to a copy of a registration poll-book offered in evidence:

"This, as we have seen from the facts stated, is not the case of the use of a book or entry for the mere purpose of refreshing the faded recollection of a witness; but it is the case of a witness who does not profess to be able to repeat from memory all the details of the transaction in question, but testifies that he made correct entries at the time of the transaction as it progressed, and that he knows that such entries were made in accordance with the truth, and that they faithfully represent the whole transaction as it occurred; and the question is whether, in reason or upon any well-settled doctrine of law, such entries ought to be excluded as evidence, when offered in connection with the testimony of the witness? We certainly know of no decision in this state that would require the exclusion of such evidence, nor are we aware of any established principle that requires it. On the contrary, we think both decision and principle fully justify its admission."

As Officer Bees was present when the arrest and search were made on December 8, 1943, saw the lottery tickets with Station Nos. 10 and 894 in the work of the defendant, and made the record himself in his own handwriting in the book, and it not being shown that the officer had any interest in stating an untruth, all the

requirements for the proper introduction of the book appear to have been met.

The record book offered shows that other persons also used lottery Stations 10 and 894. It is therefore questionable whether the introduction of this record book in any way prejudiced the defendant. It might just as reasonably have helped rather than harmed him to show that other persons used those station numbers.

It has been stated many times by this Court that evidence of unconnected and unrelated crimes which does not show knowledge, motive, intent, a common scheme, or identification is inadmissible against a defendant in a criminal case as tending to show that he committed the crime whereof he stands indicted. It is equally well established that when proof shows connection between the different transactions as raises a fair inference of a common motive in each, evidence of other crimes is admissible. Evidence which is relevant is not made inadmissible by reason of the fact that it tends to prove the defendant guilty of a crime other than the one for which he is indicted. Such evidence is not admitted because it is proof of the other crime, but because of its relevance to the charge on trial. While guilt cannot be established by proving that the defendant has committed other crimes, it is firmly established that evidence of acts may be admitted to show motive, intent, absence of mistake or accident, a common scheme, or identity embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other. *Cothron v. State,* 138 Md. 101, 110, 113 A. 620; *Callahan v. State,* 174 Md. 47, 53, 54; 197 A. 589; *Wilson v. State,* 181 Md. 1, 3, 26 A. 2d 770; *Jones v. State,* 182 Md. 653, 656, 35 A. 2d 916. "The real test of admissibility is the connection of the fact proved with the offense charged, as evidence which has a natural tendency to establish the fact at issue should be admitted." *Hitzelberger v. State,* 174 Md. 152, 161, 197 A. 605, 609.

The fact that tickets with Station Nos. 10 and 894 were found near the defendant under suspicious circumstances on the date alleged in the indictment and the fact that thirteen months before, lottery tickets with the same station numbers were found in his work at his house, would be evidence to show that the tickets found on the date of indictment had been in the possession of the defendant, the weight of such testimony being a question for the jury.

In the case of *Hitzelberger v. State*, 174 Md. 152, 197 A. 605, the accused was indicted for malfeasance in office, which was a misdemeanor, for permitting and allowing certain persons to maintain and conduct houses of prostitution for a period of time alleged in the indictment as on the 15th day of May, 1937, and on divers other days prior thereto. An objection was made in that case that evidence relating to the nature and conduct of the houses of prostitution, which the defendant was accused of permitting to operate, antedating the period of one year from the date of the presentment by reason of limitations, was inadmissible. It was contended that all evidence other than that of transactions within one year from the date of the prosecution with reference to the defendant in connection with these houses, if any, should be entirely excluded from consideration, and there was error in admitting such evidence. In that case Hitzelberger was charged with a continuing offense, and the Court rightly held that unless the State could show that the houses continued to be operated, pursuant to the alleged arrangement with the defendant, to a date within one year preceding the date of the prosecution, the entire evidence prior to one year from the date of prosecution would be stricken from the record. Permitting the operation of these particular houses was the gravamen of the charge upon which he was being tried. The cases of *World v. State*, 50 Md. 49; *Archer v. State*, 145 Md. 128, 125 A. 744; and *Hitzelberger v. State, supra,* are all cases of continuing offenses. In the case at bar the accused is not charged with a continuing offense,

but with a violation of the law on a specific date well within the period of limitation.

Article 57, Section 11 of the Code, 1939, forbids the commencement of a prosecution for the crime with which the defendant is here charged beyond the period of one year from the time of its commission. It does not forbid offering in evidence other facts which occurred a year before the commission of the offense charged if those acts have a natural tendency to establish the fact at issue. Article 57, Section 11, *supra,* is a limitation against prosecution, not a limitation against the introduction of evidence of relevant acts or of crimes other than those for which the defendant is on trial.

As to the remoteness of time, it is said in 22 *C. J. S., Criminal Law,* Section 638, at pages 977 and 978: "While the trial court may, and in some instances should, reject evidence which, although relevant or deemed to be relevant, appears too remote to be material, yet of course there are many instances in which particular evidence has been held not inadmissible on this ground; and ordinarily remoteness affects the weight, rather than the admissibility, of evidence. The question of excluding evidence because of remoteness rests largely in the sound discretion of the trial judge." Some cases in which the Court ruled that remote facts were admissible and the weight thereof a question for the jury are: *People v. Boggess,* 194 Cal. 212, 228 P. 448; *Odum v. State,* 183 Ga. 854, 190 S. E. 25; *State v. Barone,* 173 Minn. 232, 217 N. W. 104, 105; *Kiel v. State,* 136 Tex. Cr. R. 176, 124 S. W. 2d 389; *State v. Stevenson,* 169 Wash. 10, 13 P. 2d 47; *State v. Blaime,* 137 A. 829, 5 N. J. Misc. 633, affirmed *State v. Blaime,* 104 N. J. L. 325, 140 A. 566.

In the instant case the defendant was charged in the first two counts of the indictment with the possession of lottery tickets and in the third count with the sale of lottery tickets, both of which are forbidden by statute. It is said in 22 *C. J. S., Criminal Law,* Section 688, page 1111: "* * * where carrying on a particular business is absolutely forbidden, or a license is required, by stat-

ute, and accused is tried for violation thereof, it may be shown that at other times than that charged in the indictment he violated the law, such evidence of other crimes being relevant to show his system of doing business and the intent present in the act with which he is charged." 2 *Wigmore on Evidence*, 3rd Ed., Section 367.

In the case of *Wilson v. State, supra,* 181 Md. 1, 26 A. 2d 770, in speaking of the introduction of evidence of other independent acts of wrongdoing, the Court said at page 4 of 181 Md., at page 772 of 26 A. 2d: "Whether such a declaration or act is an immediate accompaniment is tested, not by the closeness of time, but by casual connection. A definite limit of time cannot be arbitrarily fixed for the reason that so long as the main transaction continues, declarations and acts emanating from it become a part of it." In the case of *Curry v. State,* 117 Md. 587, 83 A. 1030, the accused was charged with the sale of intoxicating liquors on August 1, 1911, to one William Rampley. The Court admitted in evidence testimony of other witnesses that William Rampley had purchased whiskey from the defendant in May or June preceding the date alleged in the indictment. The Court said in that case at page 593 of 117 Md., at page 1031 of 83 A., in ruling on these previous purchases: "We see no possible grounds of exception to the admission of this evidence. It bore directly upon the very charge contained in the indictment and was properly admitted."

In the case of *Callahan v. State,* 174 Md. 47, 197 A. 589, the accused was indicted for the sale of intoxicating liquors on October 5, 1937. Testimony was offered that on August 25th of the same year the defendant had liquor in his possession at his place of business. The Court held that this period of time was not unreasonably remote from the date on which the alleged sale was made. Further at page 55 of 174 Md., at page 592 of 197 A., the Court said: "Unless such evidence is too remote in time to be admissible, the disparity in time between it and

the time of the alleged offense affects only its weight or probative value."

We must therefore conclude that the third, fourth and sixth exceptions were not well taken, the evidence excepted to being admissible, the weight of such evidence being a question for the Court sitting as a jury. Although the evidence as to acts on December 8, 1943, was not at first properly admitted as pointed out in the first exception, yet as this evidence was properly admitted later as pointed out in our discussion of the third, fourth and sixth exceptions, we must conclude that the error made by the Court was cured by its proper introduction at a later time in the trial. The judgment will therefore be affirmed.

*Judgment affirmed, with costs.*