THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. EDWARD J. McFEELEY AND BERNARD J. McFEELEY, DEFENDANTS-PROSECUTORS.

Submitted May 6, 1947—Decided September 16, 1947.

Before CASE, CHIEF JUSTICE, and Justice BURLING.

For the State of New Jersey, *Horace K. Roberson,* Prosecutor of the Pleas of Hudson County, and *William P. Gannon,* Assistant Prosecutor.

For the defendants-prosecutors, *Edward J. McFeeley* and *Bernard J. McFeeley,* *Thomas H. Brown* and *Frank G. Schlosser.*

The opinion of the court was delivered by

CASE, CHIEF JUSTICE. Defendants move to quash an indictment which was returned February 27th, 1945, and which charges that the defendants, on the 6th day of January, 1942, and from thence continuously to and including the 20th day of February, 1945, were public officers in the City of Hoboken, in the County of Hudson, namely, that Edward J. McFeeley was chief of police of the Hoboken police department and Bernard J. McFeeley was an inspector of police of the same department; that as such the defendants were intrusted with the governance, control and management of the police department and the police force of the said city and with the direction and control of the members therein; that at all the

aforesaid times the defendants were charged with the public duty of using and exercising and causing to be used and exercised all proper, reasonable and effective means and all means within their power for preserving the public peace and insuring good order in the City of Hoboken and for the suppressing of gaming, bookmaking, betting upon the event of horse races, gaming resorts, horse-race pool rooms and disorderly houses, and for the making, instigating and filing of proper complaints charging the proper person with violations occurring within the said City of Hoboken of the laws of this state relating to gambling, and for the seizing, capturing, destruction and rendering useless of furniture, implements, paraphernalia and equipment used for gaming and not to return them to the person or persons owning the same or to any other person, and for the care, custody and control of all official records, memorand*um,* documents, statements and reports of the Hoboken police department relating to and concerning the violation of the laws of this state relating to gambling, and that the public duties aforesaid at all the mentioned times were enjoined by law upon the said defendants, public officers as aforesaid, and that they had under their direction, management and control numerous captains, lieutenants, sergeants, detectives, patrolmen and other officers and members of the police force of the City of Hoboken and were vested with full and adequate power and lawful authority for the proper enforcement of the said public duties as enjoined upon them by law; that on January 6th, 1942, a gaming resort, horse-race pool room and establishment, wherein the practice of bookmaking upon the running of horses, mares and geldings and the betting on horse races was conducted, was kept, maintained and operated at No. 59 Washington Street and was raided by the defendants and that certain named persons were arrested and certain described furniture, implements, paraphernalia and equipment (all capable of, intended for and used in the said practice of bookmaking and betting) were seized and captured; but that nevertheless the defendants, being officers as aforesaid and well knowing the premises aforesaid and each of them, but disregarding the public duty so by law enjoined upon them, then and there did continu-

ously, unlawfully and willfully neglect and omit to perform the said public duties so enjoined upon them (naming each *seriatim* as above set forth) and that they did then and there continuously, unlawfully and willfully neglect and omit to enforce the laws of this state in the City of Hoboken with respect to gambling, bookmaking and betting upon the running of horses, mares and geldings and the keeping and maintaining of gambling resorts, horse-race pool rooms and disorderly houses where the laws of this state concerning gambling were habitually violated in manner and form aforesaid, but on the contrary then and there unlawfully and willfully did suffer and willfully permit gambling in the manner and form aforesaid and the proper complaints charging the proper persons with violation of the laws of this state relating to gambling and occurring within the City of Hoboken to be unmade, uninstigated and unfiled and the furniture, implements, paraphernalia and equipment so seized and captured not to be destroyed and rendered useless but to be returned to the person owning the same and so continued to be used for gaming, and the official records, memorand*um,* documents, statements and reports of the Hoboken police department relating to and concerning the violation of the laws of this state relating to gambling to be uncared for, taken and removed from their custody and control, all without interference on the part of the said defendants and without the proper, reasonable and effective endeavor on their part, and without using all lawful means within their power, for the enforcement of the laws of this state for the suppression and prevention of keeping and maintaining of all gambling in the manner and form aforesaid contrary to the form of the statute in such case made and provided against the peace of this state, the government and dignity of the same.

It is contended by the defendants that the indictment was found after the period of the statute of limitations had expired. That statute (*R. S.* 2:183–2) provides:

"No person shall be prosecuted, tried or punished for any offense not punishable with death, unless the indictment therefor shall be found within two years from the time of committing the offense or incurring the fine or forfeiture. * * *"

If all of the offenses charged against the defendants were of acts which were due to be done or omitted by them before the beginning of the two year period and not thereafter, the point would have been well made; but the statute fixes no period within which it is the duty of police officials to take steps toward the laying of complaints and the prosecuting of violators of the law. Some crimes are continuing. *State* v. *Ireland,* 126 *N. J. L.* 444. An unlawful return of gambling furniture is not a continuing crime. If seized furniture is returned, the offense is complete as of the time of the return; there is no offense as to it until then and none thereafter. If, in the instant case, the furniture seized on January 6th, 1942, was unlawfully returned before February 27th, 1943, the statute bars a prosecution begun on February 27th, 1945; and if the furniture was returned after February 27th, 1943, the indictment, for the sake of certainty and to enable the accused to plead intelligently, should assign a date within the two year period. But on the other hand, if on January 6th, 1942, certain persons were apprehended by the police in the act of committing a misdemeanor, those persons would be subject to prosecution for two years thereafter and no reason is shown to us why a police officer whose duty is to lodge a proper complaint against them does not remain under that duty throughout the period when the offenders are liable to prosecution, provided, of course, the officer retains his public position that long. Therefore, according to the allegations of the indictment, the defendants were under such a duty until January 6th, 1944, and if, as alleged, they willfully neglected throughout that period to perform the duty of lodging complaints, they were subject to prosecution on account thereof at the time the present indictment was returned. We conclude that the statute of limitations had not run against that accusation.

Defendants also assert that the indictment fails to state the nature and particularity of the accusation. Bookmaking and poolselling, and the operating of a place of resort for such practices, are made a misdemeanor by *R. S.* 2:135–3, amended chapter 205, *Pamph. L.* 1940; so, as to gaming generally, *R. S.* 2:135–1. The allegation that the Washing-

ton Street premises were a gaming resort and horse-race pool room and that practice of bookmaking was conducted there clearly brings the same within the criminal category of *R. S.* 2:135–3, *supra,* and the operators, aiders and abettors within the class of persons who are guilty of a misdemeanor. The failure to initiate proper complaints against the persons there arrested, is plainly identified. The particularity is obvious. The nature of the accusation is manifest from the close adherence to the provisions of the statute. The words "willfully and unlawfully did make and take what is commonly known as a book, upon the running of horses, mares and geldings" have been held to have the clarity and certainty of statement requisite to apprise persons indicted for that misdemeanor of the offense they are called upon to meet. *State* v. *Morano,* 134 *N. J. L.* 295. If that language is sufficiently certain in an indictment charging the main offense, it is likewise sufficient in an indictment charging a police officer with misconduct in not prosecuting that offense. The violation of a prescribed duty to the public is itself a crime for which the offender may be indicted at common law. *State* v. *Startup,* 39 *Id.* 423. See, also, the statute, *R. S.* 2:160–1: "Any magistrate or other public officer who shall willfully refuse or neglect to perform, within the time required by law, any duty imposed upon him by law, shall be guilty of a misdemeanor."

It is charged that the indictment is duplicitous. We find that it is not. The indictment is for official misconduct in the single field of horse race gambling. The charges are all cognate. An indictment based upon the accusation of official misconduct in office is not invalidated by the allegation of divers acts, committed on different days, which differ in their nature and which constitute distinct offenses against the law, so long as they are cognate to the charge of official misconduct. *State* v. *Bolitho,* 103 *N. J. L.* 246, 261; *affirmed,* 104 *Id.* 446.

Defendants complain that the source of their duty is not sufficiently pleaded. The duty of police officials, especially the ranking heads of a department, to make reasonable effort toward the maintaining of order and the suppressing of

houses, designated disorderly houses, where the public laws of the state are habitually violated, is generally known and accepted. It was said by this court in *State* v. *Donovan,* 132 *N. J. L.* 319 (italics inserted) :

"It [the indictment] charges in plain terms that the defendant officials were public officers of the City of Bayonne whose duty it was to see that the law was not broken in that city, and that they willfully, with knowledge, or because of culpable negligence, failed to take suitable steps to remedy criminal conditions of which they were fully aware and which were of public notoriety. It is argued, as a branch of this point, that the duties of the defendants as public officers are confined to those specified in ordinances and resolutions of the board of commissioners and what is called 'a written specification of the duties of the deputy director of public safety,' and that the indictment fails to allege any breach of such duties. But this seems to us to fly in the face of ordinary common sense. *One of the fundamental duties of a police department, from chief of police to patrolman, is to be on the lookout for infractions of the law and to use due diligence in discovering and reporting them, and in a proper case arresting the perpetrator and lodging and prosecuting a proper complaint.*"

The indictment is further attacked upon the ground that the presence of the Attorney-General in Hudson County performing the duties of the prosecutor of the pleas was an unconstitutional usurpation of office. This is made to rest upon several arguments: that something more than a statutory authority was necessary, that the office of prosecutor is incompatible with that of Attorney-General, that the Governor failed in his constitutional duty in not earlier filling the vacancy. By chapter 20, *Pamph. L.* 1944, approved March 7th, 1944, and taking effect immediately, it was provided that the Attorney-General shall "prosecute the criminal business of the state in a county having no prosecutor of the pleas." When the indictment under review was found and returned there was no prosecutor in the County of Hudson, and the Attorney-General, either in person or by his deputies or assistants (chapter 20, *Pamph. L.* 1944, section 5) was

supervising the criminal business of the county. The Attorney-General was there by virtue of his office and with color of authority during a time when there was no county prosecutor and was transacting the criminal business of the state both before the grand juries and otherwise. He was the acting and accredited official functioning in person or through his deputies or assistants to meet an essential social need. If defendants' point were well made and the application of it sustained, the effect would be to void all of the indictments found and returned in Hudson County through a period of more than two years. An indictment may not be attacked upon the contention that the officers who attended with respect to it, although duly and officially acting therein, were not entitled to hold the office which they were filling. That the title of an incumbent to an office cannot be attacked in this collateral way is entirely settled. *State* v. *Biehl,* 135 *N. J. L.* 268; *State* v. *Zeller,* 83 *Id.* 666. *Cf. State* v. *Toth,* 86 *Id.* 247. It is not an answer to say, as the defendants do say, that this is not a contest for the title to office; for in conceding, which is obviously the fact, that the contest is not for the title to office the defendants are driven to the position that the acts of a *de facto* officer serving under statutory authority in the performance of an essential public duty may be collaterally attacked, or that the appearance of the Attorney-General or of his deputy or assistant before the grand jury is a ground for invalidating the indictment. As a general rule, the acts of a *de facto* officer are valid. We consider that the present issue is fairly within the guidance of such cases as *Byrnes* v. *Boulevard Commissioners,* 121 *Id.* 497; *Hyman* v. *Long Branch Kennel Club, Inc.,* 115 *Id.* 123, and *State* v. *Cioffe,* 128 *Id.* 342, and that the authority of the Attorney-General may not here be questioned. We are here accommodating our discussion to the argument of the defense that the Attorney-General was assuming to act as the prosecutor. The fact is that he was not acting and was not assuming to act as the prosecutor, he was doing his statutory duty as Attorney-General in performing the work that ordinarily is performed by a prosecutor but which in this case could not be for the reason that there was no prose-

cutor. The other alternative is the subject of a new point which will be discussed in the next paragraph. *Clawson* v. *Thompson,* 20 *Id.* 689, cited by defendants on the proposition that the offices of Attorney-General and prosecutor of the pleas are incompatible, was on *quo warranto* and relates to an issue which, as just indicated, defendants disavow. Such incompatibility as exists is due to legislative fiat. There is nothing inherently or constitutionally incompatible in the performance by the Attorney-General of the duties of a prosecutor of the pleas. Until the statute directed otherwise the Attorney-General was in control of prosecutions throughout the state. The incompatibility lies in the appointment of the same person to hold both offices, and even this, being a legislative inhibition, is subject to change or modification by legislation. "The attorney general here, as in England, is the representative of the state in the prosecution of offenses against the state. Except as modified by constitutional or statutory regulation, his functions here are similar to those exercised by the representative of the crown there." *State* v. *Zabriskie,* 43 *Id.* 369. Our cases are clear on the point that the incompatibility which makes it unlawful for the two offices to be held contemporaneously by the same person is due to the statutes. *Clawson* v. *Thompson, supra; State* v. *Zabriskie, supra; Public Utility Commissioners* v. *Lehigh Valley Railroad Co.,* 106 *Id.* 411. As we have found, the presence of the Attorney-General in Hudson County was not as an appointed prosecutor but in his capacity as Attorney-General under statutory direction. The legality of his acts while so serving may not be questioned in this proceeding upon the contention that the Governor violated the constitutional scheme in not earlier filling the vacancy in the prosecutor's office.

The presence of the Deputy Attorney-General before the grand jury when the vote to indict was taken is set up as a violation of defendants' rights. The functions of the Attorney-General and his deputies in fulfilling the duties of a county prosecutor during a vacancy in the office of the latter is correlative with that of the prosecutor of the pleas. *R. S.* 52:17A–5; *Pamph. L.* 1944, *ch.* 20, *p.* 52, § 5. It is within

the province of the grand jury to exclude the prosecutor, or one who performs the functions of a prosecutor, from the conference room during their deliberations upon the evidence or when the vote is taken. It does not appear that the deputy was asked to retire. The courts are slow to disturb the action of a grand jury for matters that occur within the grand jury room and do not constitute misconduct. No misconduct is here alleged beyond the mere fact of presence; and presence, of itself, is not misconduct. *State* v. *Biehl, supra.* In the absence of any participation by the prosecuting officer in the deliberations of the jury or effort on his part to influence their finding, there having been no request upon him to leave, we think that his simple presence in the jury room is not good ground for quashing an indictment. *Cf. Commonwealth* v. *Bradney* (*Pa.*), 17 *Atl. Rep.* 600. It was said in *State* v. *Dayion,* 23 *N. J. L.* 49, 58:

"It is not denied that the court may, in the exercise of a sound discretion, in order to promote the purity of the administration of justice and for the greater security of the rights of the citizen, quash an indictment by reason of the misconduct of the grand jury. But if it be meant to assert that that is a right on the part of the defendant, of which he may avail himself by plea, we apprehend the proposition is totally indefensible. It is founded in a misapprehension of the office of the grand jury, who are not to try or convict the defendant, but merely to authorize the accusation upon which he may be put upon trial."

Defendants' first, second, fourth and eighth points are references to and are embraced within the "common brief" which was considered, and the points of which were resolved against the defendants, in *State* v. *Grundy,* 136 *N. J. L.* 96, and need not be separately considered here.

Both the state and the defense remark, in their respective briefs, that Mr. Bernard J. McFeeley has died, but neither of them moves a course. They make their arguments, and we have accordingly made the decision, independently of that fact.

The motion to quash will be denied and the writ of *certiorari* will be dismissed, with costs.