# JAMES EDWARD DUNCAN *v.* STATE OF MARYLAND

[No. 116, September Term, 1977.]

*Decided April 10, 1978.*

386

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*Robert Paul Mann* for appellant.

*Deborah K. Handel, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Clarence W. Sharp, Assistant Attorney General,* and *Kathleen M. Sweeney, Assistant Attorney General,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court. MURPHY, C. J., concurs in the judgment and filed an opinion concurring in the judgment at page 395 *infra.*

Upon our review on writ of certiorari, we reverse the judgment of the Court of Special Appeals which affirmed the judgment of the Circuit Court for Baltimore County entered upon the conviction at a bench trial of James Edward Duncan, a police officer, for the crime of misconduct in office. *Duncan v. State,* 37 Md. App. 330, 377 A. 2d 567 (1977). We reverse the judgment of the intermediate court because the prosecution of the offense of which Duncan was found guilty was barred by limitations.

I

Statutes of limitations in criminal cases create "a bar to the prosecution, and the time within which an offense is committed becomes a jurisdictional fact. The state, therefore, has the burden of proving affirmatively the commission of the offense charged within the period limited by statute for its

prosecution," and "[i]f the prosecution relies upon an exception to remove the bar of the statute of limitations, the burden of proof is on the prosecution to show the applicability of the exception." 1 Wharton's Criminal Evidence § 21 (13th ed. 1972). Furthermore, criminal limitations statutes are to be liberally interpreted in favor of repose. *Toussie v. United States,* 397 U. S. 112, 115, 90 S. Ct. 858 (1970); *United States v. Habig,* 390 U. S. 222, 227, 88 S. Ct. 926 (1968); *United States v. Scharton,* 285 U. S. 518, 522, 52 S. Ct. 416 (1932). The general rule with regard to whether an offense was committed within the period limited by the statute for its prosecution is simply stated: "Statutes of limitation normally begin to run when the crime is complete." *Pendergast v. United States,* 317 U. S. 412, 418, 63 S. Ct. 268 (1943); *United States v. Irvine,* 98 U. S. 450, 452 (1878).

## II

In Maryland, misconduct in office is a common law misdemeanor.[1] It is corrupt behavior by a public officer in the exercise of the duties of his office or while acting under color of his office. Perkins on Criminal Law 485 (2d ed. 1969). *See Hitzelberger v. State,* 174 Md. 152, 197 A. 605 (1938). The corrupt behavior may be (1) the doing of an act which is wrongful in itself — malfeasance, or, (2) the doing of an act otherwise lawful in a wrongful manner — misfeasance; or, (3) the omitting to do an act which is required by the duties of the office — nonfeasance. *State v. Carter,* 200 Md. 255, 262-267, 89 A. 2d 586 (1952); *Chester v. State,* 32 Md. App. 593, 601-610, 363 A. 2d 605, *cert. denied,* 278 Md. 718 (1976); Perkins on Criminal Law 482-492 (2d ed. 1969).[2]

There being no statute in this State prescribing punishment for committing the offense, an offender is subject to the

---

[1]. Misconduct in office is the term frequently employed, but many substitutes have been used, such as, official misconduct, misbehavior in office, malconduct in office, malpractice in office, misdemeanor in office, and corruption in office. Perkins on Criminal Law 485 (2d ed. 1969).

[2]. We observed in State v. Carter, 200 Md. 255, 263, 89 A. 2d 586 (1952): "The cases in this court do not always call misconduct in office by either one of the two terms, malfeasance or misfeasance, but when they do use the words, they seem to recognize the distinction." The same observation applies to nonfeasance.

common law punishment — imprisonment or fine to which may be added removal from office and disqualification to hold office. 4 W. Blackstone, Commentaries *141. Therefore, prosecution for the crime must be instituted within one year after the offense was committed. Maryland Code (1974) Courts and Judicial Proceedings Article § 5-106 (a).[3]

As we have indicated, "[g]enerally speaking, a statute of limitations begins to run as soon as the offense is completed, and ordinarily there is no difficulty in fixing this point of time, because nearly every crime consists in a definite act or a definite result of some act. However, there are crimes which are continuing in character. As to these it is held that the statute does not begin to run until the last act is done which viewed by itself is a crime." 1 Wharton's Criminal Law and Procedure § 181 (1957). In *Ellingham v. State,* 163 Md. 278, 280, 162 A. 709 (1932), in discussing the nature of a continuing offense, we adopted a definition taken from *State v. Jones,* 201 N. C. 424, 426, 160 S. E. 468 (1931):

> " 'Wharton defines a continuing offense as a transaction or a series of acts set on foot by a single impulse, and operated by an unintermittent force, no matter how long a time it may occupy. [Wharton's Criminal Pleading and Practice § 474 (8th ed. 1880)]. It is an offense which continues day by day. * * * The prosecution of an offense of this nature is a bar to a subsequent prosecution for the same offense charged to have been committed at any time before the institution of the first prosecution, but it is not a bar to a subsequent prosecution for continuing the offense thereafter, as this is a new violation of the law.' "

*See State v. James,* 203 Md. 113, 119-120, 100 A. 2d 12 (1953). 1 Wharton's Criminal Law and Procedure § 181 (1957) puts it this way: "An offense is deemed to be a continuing offense

---

**3.** Code (1974) Courts and Judicial Proceedings Article § 5-106 (a) reads: "Except as provided by this section, a prosecution for a misdemeanor not made punishable by confinement in the penitentiary by statute shall be instituted within one year after the offense was committed." The exceptions designated in the section are not here applicable.

within the statute of limitations when there is a continuing course of conduct as distinguished from the continuance of the result or effect of the original crime." When mere possession of a prohibited article is a crime, the offense is a continuing one because the crime is committed each day the article remains in possession, as there is a continuing course of conduct. *See Marron v. United States,* 8 F. 2d 251, 254 (9th Cir. 1925), *aff'd,* 275 U. S. 192 (1927).

## III

The crime of which Duncan was convicted was charged in a true bill returned by the Grand Jurors for Baltimore County and filed in the Criminal Court for Baltimore County on 13 May 1976.[4] It presented that Duncan:

> "on or before the 12th day of March in the year of our Lord nineteen hundred and seventy-six at Baltimore County, aforesaid being then and there a public officer to wit: a police officer for Baltimore County, State of Maryland, unlawfully, knowingly and corruptly did, under color of his office aforesaid, endeavor to obstruct, impede and pervert, the due administration of public justice and did obstruct, impede and pervert the due administration of public justice by retaining possession of goods to wit: with knowledge that said goods were obtained unlawfully by Michael Ronald Mally, said action by JAMES EDWARD DUNCAN being in wilful disregard and violation of the duties of said JAMES EDWARD DUNCAN, as a police officer for Baltimore County, State of Maryland, thereby constituting a perversion of the trust reposed in said JAMES EDWARD DUNCAN, as a police officer for Baltimore County, State of Maryland; against the peace, government and dignity of the State. (Misconduct in Office-Common-Law)"

---

4. Four other indictments were returned against Duncan, each charging receiving stolen goods (1st count) and conspiring to receive stolen goods (2nd count). One of the indictments was nol prossed before trial. Duncan was found not guilty under each of the other indictments, apparently because the evidence established that the goods alleged to have been received were not stolen but were obtained by false pretenses.

Duncan claims that if, in fact, the offense was committed by him, it was perpetrated at a time antedating the one year statutory limitations period. The State counters by urging that the crime was a continuing one, and as such, was still being committed within one year before the date of the presentment.

Ordinarily, a continuing offense is marked by a continuing duty in the defendant to do an act which he fails to do. The offense continues as long as the duty persists, and there is a failure to perform that duty. For example, a failure to register in compliance with the Alien Registration Act is a continuing offense, *United States v. Franklin,* 188 F. 2d 182, 187 (7th Cir. 1951), as is the failure to keep records as required by maximum price regulations, *United States v. Belfast Fabrics Corporation,* 65 F. Supp. 567, 567-568 (S.D.N.Y. 1946), failure to register for the draft, *Fogel v. United States,* 162 F. 2d 54, 55 (5th Cir.), *cert. denied,* 332 U. S. 791 (1947), *rev'd per curiam on other grounds,* 335 U. S. 865 (1948), and nonsupport, *Richardson v. State,* 30 Del. (7 Boyce) 534, 537, 109 A. 124 (1920); *Towns v. State,* 24 Ga. App. 265, 100 S. E. 575 (1919).

When a public officer is the person who fails to perform the duty, he has committed the crime of misconduct in office by the corrupt act of nonfeasance. Thus, when the act of misconduct is the permitting of unlawful bookmaking activities to operate it is a continuing offense. *State v. Hozer,* 19 N. J. 301, 116 A. 2d 193 (1955) and *State v. McFeeley,* 136 N.J.L. 102, 54 A. 2d 797 (1947).[5] It is understandable, therefore, that the State would have the misconduct in office ascribed to Duncan to be by an act of nonfeasance so as to be a continuing offense. It asserts: "[Duncan] was under a

---

5. Hitzelberger v. State, 174 Md. 152, 197 A. 605 (1938) did not directly address the point of a prosecution barred by limitations. The misconduct of the police officer was in permitting and allowing the maintenance of houses of prostitution, and although the Court spoke in terms of malfeasance, it seems that the offense was more accurately nonfeasance. In any event, the Court considered the type of misconduct there as a continuing offense and held that in such an offense " 'evidence of acts and conduct of the defendant which occurred prior to the date alleged in the indictment is admissible to show the formation of a habit continuing into the period in which the statute does not bar the prosecution.' " *Id.* at 163 (quoting 1 Wharton's Criminal Evidence 491 (11th ed.)).

continuous obligation as a police officer to, at the very least, report an offense of which he had knowledge as well as to return goods which he possessed, knowing them to have been unlawfully obtained. [Duncan's] violation of his duties cannot be isolated to any one point in time because the violations, like the duties, were continuous." For those reasons, the State submitted that "the misconduct in the case at bar was still in progress at the time of presentment." The State suggests, and we agree, "that the guideline in this case . . . is the nature of the crime involved." We simply cannot read the indictment as charging that Duncan "failed to lodge a complaint against Mally," or, in other words, committed an act of nonfeasance by failing to institute prosecution of Mally.

Former Maryland Rule 712 a, applicable in this case,[6] provided that "[a]n indictment shall contain a plain, concise and definite statement of the essential facts constituting the specific offense with which the defendant is charged." *See Goeller v. State,* 119 Md. 61, 63, 85 A. 954 (1912). The offense is determined by the facts stated in the indictment. *Carter,* 200 Md. at 262 (quoting *Cargile v. State,* 67 Ga. App. 610, 611, 21 S.E.2d 326 (1942)). It is perfectly clear that by the facts stated in the indictment here, the corrupt act constituting the crime of misconduct in office was the retaining of goods by Duncan with knowledge that they were obtained unlawfully by Mally. Plainly, this was malfeasance. No reasonable interpretation of the indictment will support the view that it was sufficient, as the State suggests, to charge nonfeasance by Duncan's failure to institute a prosecution of Mally for Mally's illegal acts.

### IV

It was established a century ago that the criminal withholding of money or property was not a continuing offense. In *United States v. Irvine, supra,* an attorney was charged with unlawfully withholding money paid by the United States for his client under the pension laws. He pleaded limitations. The government pointed out that the attorney had received the money and had continued to hold

---

6. The comparable present Rule 711 a was adopted effective 1 July 1977.

it for 20 years. It urged that "every year, every month, every day, was a withholding, within the meaning of the statute." 98 U. S. at 452. The Court did not agree. It thought that "[i]t is unreasonable to hold that twenty years after this he can be indicted for wrongfully withholding the money. . . ." *Id.* It said:

> "There is in this but one offence. When it is committed, the party is guilty and is subject to criminal prosecution, and from that time, also, the Statute of Limitations applicable to the offence begins to run." *Id.*

It explained:

> "Whenever the act or series of acts necessary to constitute a criminal withholding of the money have transpired, the crime is complete, and from that day the Statute of Limitations begins to run against the prosecution." *Id.*

The Court held that the crime was not a continuous one to the time of the indictment and that the Statute of Limitations constituted a bar to the prosecution. *Id.* at 452-453.

*Irvine* was the cornerstone in a series of decisions which interpreted concealment of assets in bankruptcy cases as not to be a continuing offense, leading to legislative enactment expressly making such concealment a continuing offense.[7]

Other cases have held that the wrongful retaining of property is not a continuing offense. For example, the defendant in *United States v. Mendoza,* 122 F. Supp. 367 (N. D. Cal. 1954) was charged with the statutory crime of retaining property which he knew to be stolen from the United States. The question was whether the crime was a

---

7. *See,* for example, Rudin v. United States, 254 F. 2d 45 (6th Cir.), *cert. denied,* 357 U. S. 930 (1958); Warren v. United States, 199 F. 753 (5th Cir. 1912); United States v. Trotter, 8 F. Supp. 275 (S.D. Ala. 1934). 18 U.S.C. § 3284 (1948) provided:

> "The concealment of assets of a bankrupt or other debtor shall be deemed to be a continuing offense until the debtor shall have been finally discharged or a discharge denied, and the period of limitations shall not begin to run until such final discharge or denial of discharge."

continuing offense. The government argued that in order for the defendant to prevail in his contention that the indictment was barred by the statute of limitations, he must establish in essence that he did not possess and retain United States property within the limitation period last past since the date of the filing of the indictment. There was no showing that the date of the original retention was within the statute of limitations. The court held: "In the instant case criminal intent is an element of the crime, and therefore the statute of limitations should commence to run from the time that defendant first retained the property with the necessary intent." *Id.* at 368. In *State v. Webb,* 311 So. 2d 190 (Fla. App. 1975), Webb incurred and concealed goods knowing they were stolen, a statutory felony in the third degree. By statute, prosecution for the crime had to be commenced within two years after commission of the crime. The court held "that the crime of receiving and concealing stolen property is not a continuing offense and that the statute of limitations begins to run when the crime is complete, to wit: when the property is received and concealed with the knowledge that the same is stolen." *Id.* at 191. In *State v. Ladely,* 82 Wash. 2d 172, 509 P. 2d 658 (1973) the buying, selling, receiving or aiding in concealing or withholding any property which had been stolen was a statutory offense. The court found it to be clear and so held, "that the commission of the crime . . . occurs at the time of coming into possession [of the goods] with guilty knowledge" so that "the statute of limitations starts to run with the receiving of the stolen property, or with the occurrence of one of the other acts mentioned. . . ." *Id.* at 177. In *State v. Friend,* 210 Iowa 980, 230 N. W. 425 (1930) the court held that in a prosecution for receiving stolen goods, the time which is material insofar as the statute of limitations is concerned, is the time when the defendant bought or received the goods. *Id.* at 986. In *Jones v. State,* 14 Ind. 346 (1860), involving a stolen mare, the state's attorney contended that " 'the offense of receiving stolen goods is a continuing offense, and each day's possession is a new, or continued reception.' " *Id.* at 347. The court rejected that position: "The offense was complete when the defendant received the

mare, knowing her to have been stolen. It was then committed. ... We are of the opinion that the statute of limitation commenced running ... when the defendant received the stolen mare, and therefore continued to run." *Id.* The prosecution was barred because it had not been commenced within the time prescribed by the statute of limitations. *Id.*[8]

## V

The last transaction Duncan had with Mally was in December 1974 when Duncan accepted possession of a suede coat. This was the last act done which viewed by itself was a crime. Thus, the crime was committed at the time Duncan accepted and retained the coat. Duncan's act in receiving the coat with knowledge that it had been unlawfully obtained by Mally completed the offense. From that date limitations began to run against the prosecution for the offense. Mere possession of the coat was not a crime. Retaining the goods thereafter was no more than a continuance of the result or effect of the original crime and not a continuing course of criminal conduct.

The prosecution was not begun until 13 May 1976 when Duncan was presented and the indictment filed. More than one year elapsed between the time the crime was committed and the prosecution commenced. The institution of the prosecution was barred by the provision of Code (1974) Courts and Judicial Proceedings Article § 5-106 (a).

Mr. Justice Douglas observed: "Every statute of limitations, of course, may permit a rogue to escape." *Pendergast,* 317 U. S. at 418. The obligation of the law here is plain. We reverse the judgment of the Court of Special

---

8. The statute of limitations forbids the commencement of a prosecution for a crime not commenced within the statutory period. It does not forbid offering in evidence other facts which occurred a year before the commission of the offense charged if those acts have a natural tendency to establish the fact at issue. Purviance v. State, 185 Md. 189, 198, 44 A. 2d 474 (1945). In *Purviance,* although the Court indicated that possession of lottery tickets is not a continuing offense, the statute of limitations as a bar was not the issue. The holding was that the charge of possession of lottery tickets did not prevent the admission of evidence of such possession more than one year before the date of prosecution because the accused was charged with a violation of the law on a specific date well within the period of limitation. *Id.* at 197-198.

Appeals and remand the case to that court for further remand to the Circuit Court for Baltimore County with direction to dismiss the indictment.

> *Judgment reversed; case remanded for further proceedings pursuant to this opinion; costs to be paid by Baltimore County.*

*Murphy, C. J. concurring in the judgment:*

I concur in the judgment reversing the conviction but not for the reason stated by the Court.

The indictment charged that Duncan, a police officer, while acting under color of his office, impeded and obstructed justice by retaining possession of goods with knowledge that they had been unlawfully obtained by Mally. The Court of Special Appeals held that there was legally sufficient evidence to convict Duncan of misconduct in office on the premise that the indictment charged him with concealing knowledge of Mally's criminal activities in violation of his official duty to disclose it. It said that the offense was a continuing one up to November, 1975, and, therefore, not barred by limitations because the last illegal transaction between Duncan and Mally, for which Mally could be prosecuted, was within a year of the date of the indictment.

In reversing the Court of Special Appeals the majority holds, and I agree, that the indictment cannot properly be read to charge Duncan with nonfeasance for failing to institute prosecution of Mally for his illegal acts. The majority instead holds that the indictment was one charging malfeasance, *i.e.,* the retention of goods by Duncan with knowledge that they were unlawfully obtained by Mally; it concludes that the offense charged was barred by the one year statute of limitations applicable to non-penitentiary misdemeanors because the last transaction between Mally and Duncan occurred more than one year after the indictment against Duncan was returned.

In my judgment, it is unnecessary for the Court, in reversing the conviction, to determine whether limitations

barred prosecution in this case. It is crystal clear and totally dispositive of this case that there was no evidence to support the essential averment of the indictment, namely, that Duncan's wrongful act in retaining possession of the unlawfully obtained goods was under color of his office. While there was evidence showing that Duncan obtained the goods under color of office, he was not charged with misconduct in office on that account. Because there was no evidence to show, as alleged in the indictment, that Duncan's retention of the goods was under color of office, I would conclude the case on that ground and not reach the question of limitations.

It is true, as the Court states, that limitations ordinarily begin to run as soon as the crime of misconduct in office is completed. The Court says that the crime, in this case, was completed in December, 1974, when Duncan last received goods from Mally knowing that they had been unlawfully obtained. It says that Duncan's retention of the goods was merely a continuance of the result, and not a continuous course of criminal conduct. I am badly troubled by this expansive application of the statute of limitations to the crime of misconduct in office where, as here, Duncan's wrongful possession of the unlawfully obtained goods continued secretly until a few months prior to the return of the indictment. A police officer holds a particularly sensitive position of public trust. Public confidence in. the administration of justice would be badly eroded — indeed shaken· to its teeth — if we were to treat the crime of misconduct in office, where it involves the wrongful obtention and retention of goods by a police officer under color of office, as if it were no different than any offense committed by a common thief or receiver.